19  560
23  268
25*  150
31*  602
19  560
f39  474
19  560
41  121
19  560
42  249
19  560
47  192

## AMOS N. KING ET AL., RESPONDENTS, *v.* JOHN R. BRIGHAM ET AL., APPELLANTS.

BOUNDARIES—MONUMENTS CONTROL COURSES AND DISTANCES.—The actual location of lines and monuments on the ground will control over courses and distances, and if such monuments can be found the courses and distances must give way. *Lewis v. Lewis,* 4 Or. 178, approved.

EVIDENCE—SUFFICIENCY OF.—Where it is claimed lines and monuments do not agree with courses and distances, the evidence of their actual location must be so clear and satisfactory as to establish that fact to the entire satisfaction of the court or jury and to place beyond question the actual location of the lines or monuments.

APPEAL from Multnomah county: E. D. SHATTUCK, judge.

This is a suit brought under the statute of 1887 (Hill's Code, §§ 506, 510,) by the respondents and against J. R. Brigham, A. D. Tufts, Henry Fleckenstein, S. Julien Mayer, David Cole, D. Cavanaugh, Peter Esser, Mary Soderstrand and the city of Portland, to settle a disputed boundary between the King and Lownsdale donation land claims in Multnomah county, Oregon. The complaint is in the usual form, averring: "That the said boundary line between the lands aforesaid is as follows, to wit: Commencing at a point in the east boundary line of the Amos N. King donation land claim, which point is the northwest corner of the W. W. Chapman donation land claim, and also the southwest corner of the D. H. Lownsdale donation land claim (this corner was marked by a stone monument), thence northerly along the east boundary line of the Amos N. King donation land claim to a point which is ninety-three (93) feet easterly, measured along the south boundary line of B street in said city, from a point where the south boundary line of said B street is intersected by the west boundary line of Fourteenth street in said city, as extended by the common council of said city of Portland, county of Multnomah and State of Oregon, said line being the easterly boundary line of the said plaintiff's land and the westerly boundary line of the defendant's land."

The separate answers of each of the defendants, except the city of Portland, are substantially the same and deny

that the boundary line commences on the east boundary line of the Amos N. King donation land claim, other than as hereinafter set forth, or that said point is the northwest corner of the W. W. Chapman and D. H. Lownsdale donation land claims, or that said line runs thence northerly along the east boundary line of the Amos N. King donation claim to a point which is 93 feet easterly, measured along the south boundary line of B street from a point where said B street is intersected by the west boundary line of Fourteenth street, as alleged by plaintiff, or that said line is the easterly boundary line of plaintiff's lands or the westerly boundary line of the lands belonging to these defendants.   These defendants, further answering, allege "that the true and correct east boundary line of the A. N. King donation land claim, as established by the proper officers of the United States to said King, commences at a point on the base line, which is three chains east of the southwest corner of the southwest quarter of section 33, township 1 north, of range 1 east of the Willamette meridian, and running thence north 20° 15′ east 20.60 chains to a point near and intersecting the south line of B street, as now laid out and existing in said city of Portland, county of Multnomah and State of Oregon; and that the southwest corner of the donation land claim of said D. H. Lownsdale and Nancy Lownsdale, as established by the officers of the government of the United States and patented to them, commences at a point on said line last described north 20° 15′ east and 6.15 chains distant from the said commencement point of said King's donation land claim; thence running north 20° 15′ east 14.45 chains intersecting and near the south boundary of said B street, and distant in a westerly direction from the west line of Fourteenth street, as originally laid out, 77 feet, more or less, to the said east line of King's donation land claim and the west boundary line of said Lownsdale donation land claim as herein set forth.   And for a further answer, these defendants plead adverse possession for more than ten years.

XIX. OR.—36.

The reply denies the new matter set up in the answer, including the adverse possession of the defendants.

The answer of the city of Portland, after denying and alleging substantially the same facts concerning the true boundary as in the answer of the other defendants, alleges that there is a public street through the lands of defendants Brigham and Tufts.

The cause was referred to a referee to report the testimony and conclusions of fact and law; and on the coming in of his report, the court below modified the same and found "that the eastern boundary line of the donation land claim of Amos N. King and the western boundary line of the donation land claim of Daniel H. and Nancy Lownsdale, as originally run, is a line commencing at the stone monument at the northwest corner of the donation land claim of W. W. Chapman, which is also the southwest corner of the donation land claim of Daniel H. and Nancy Lownsdale; and thence running northerly on a line north —— degrees east to a point in the south line of John H. Couch donation land claim, which is seventy (70) feet from the west line of Fourteenth street in the city of Portland, Oregon, sometimes called 'Old Fourteenth street.'" The court also found that by reason of adverse possession of the plaintiff Amos N. King, as found by the referee, he, said Amos N. King, is the owner in fee simple of all the lands described in the complaint which lie north of the south line of Morrison street, if extended westerly, and west of a line running north 20° 15′ east from the stone monument at the northwest corner of the W. W. Chapman claim to the south line of the John H. Couch donation land claim, where there is an iron post set by C. W. Burrage. A decree was entered against the city of Portland, adjudging that Morrison street does not extend further west than the west line of Fourteenth street. A decree was then entered establishing the line between plaintiffs and defendants Cole, Cavanaugh, Soderstrand and Esser as one running from the stone monument at the southwest corner of the Lownsdale claim to a point in the south line of the

Couch claim, which is 70 feet west of the west line of Old Fourteenth street, and between plaintiffs and defendants Brigham and Tufts as a line running from the stone mon‧ ument at the northwest corner of the Chapman claim north 30° 15′ east to the iron post set by C. W. Burrage in the south line of the Couch claim. From this decree, the defendants Brigham, Tufts and Cole appeal. The facts sufficiently appear in the opinion.

*R. & E. B. Williams* and *C. H. Carey,* for Appellants.

*Killin, Starr & Thomas* and *Moreland & Masters,* for Respondents.

BEAN, J., delivered the opinion of the court.

The matter sought to be established in this suit is the true location of the boundary line between the donation land claims of A. N. King and Daniel H. Lownsdale in Multnomah county, Oregon. In March, 1852, King, Lownsdale, and W. W. Chapman filed upon adjoining donation claims on what was then unsurveyed public lands. The initial point of the King and Chapman claims, as stated in the notifications of the respective parties, is the same, being 3.00 chains east of the southeast corner of the southwest one-fourth of section 33, township 1 north, range 1 east. According to the calls of the notification, certificates, field notes and patent of the King claim, this boundary line runs from the initial point north 20° 15′ east 20.60 chains, this line being the one in dispute in this case. The Chapman claim from the initial point, according to the notification, runs north 20° 15′ north 6.15 chains; but the initial point as mentioned in the field notes of the survey, and in the certificate of the Chapman claim, is .04 chains further east than as stated in the notification, and the course as given in the field notes and certificate is north 20° 45′ east, in place of north 20° 15′ east, as given in the notification. The Lownsdale claim is what is known as a legal subdivision claim. The original plat map of the survey of the claims of King, Chapman, and Lownsdale, as approved by the surveyor-general, shows the eastern

boundary line of the King claim and western boundary line of the Chapman and Lownsdale claims to be a common line, and the southeast corner of the King claim to be the southwest corner of the Chapman claim, and the northwest corner of the Chapman claim to be the southwest corner of the Lownsdale claim; but the field notes of the survey of these claims, as made by the United States deputy surveyor, do not mention or refer to any point or monument as common to the respective claims or as common to any of them. There are stone monuments at the southeast corner of the King claim and the northwest corner of the Chapman claim which are conceded in this case to have been located at the place designated by the government surveyor as the original corners of these claims. There is no dispute in this case as to the correct location of the original initial point of the King claim on the base line. It is also conceded by plaintiffs that a line projected from the initial point of the King claim and running thence north 20° 15' east 20.60 chains, the course and distance according to the calls in the notification, certificate, field notes and patent of the claim, will intersect the southern boundary line of the Couch claim about seventy-five feet westerly from the western boundary line of Fourteenth street, sometimes called "Old Fourteenth street." This is the line defendants claim to be the true boundary line between the King and Lownsdale claims, and, therefore, it will be observed that plaintiffs admit at the outset of this case that the line defendants are contending for is the correct line as called for by the course and distance given in the notification, certificate, field notes and patent of the King claim; but they seek to avoid the force of this fact, by claiming (1) that since the King, Chapman, and Lownsdale claims are or were intended to be adjoining claims and to have a common division line, that the true boundary line between them should be extended from the southeast corner of the King claim through the northwest corner of the Chapman claim to the intersection with the Couch claim at the point on B

street where there is an iron rod, set by C. W. Burrage; (2) that the location of the original northeast course of the King claim by the deputy United States surveyor has been established by the evidence and should control over courses and distances, this corner being, as plaintiffs claim, at the point in B street where the iron rod is located; and (3) that a line extended east from the located corner of the King claim, being the southwest corner of the Couch claim, and in this case known as the corner under Judge Stearns' house, according to the course and distance given the field notes of the King claim, will establish the southeast corner of the claim at the point in B street where the iron rod before referred to is located. These claims we will notice in the orders claimed:

1. The southeast corner of the King claim is the last corner established by the government surveyor in running the exterior lines of the claim. The field notes show the claim was surveyed by commencing at the initial point in the base line and running thence north 20° 15 east 20.60 chains, and so on around the claim to the southeast corner, and thence a certain course and distance to the place of beginning. There is no reason shown in this case why this corner is any more nearly correct than any other known corner of the claim, and certainly no sufficient reason was suggested by counsel why it should prevail over the known initial point of the survey, and we have been unable to find any. The claim that the northwest corner of the Chapman donation should govern in the location of the line in dispute may be disposed of by saying that such corner is nowhere mentioned or referred to in the courses or distances given in the field notes, notifications, certificate or patent of the King claim, nor mentioned as one of the calls in the description of such claim; and besides, the field notes of the Chapman claim show that the initial point of the claim is four links east of the initial point of the King claim, and the course is 30° east of the corner of the King survey, so that according to the field notes of the two claims, the northwest corner

of the Chapman donation must necessarily be east of the line of the King claim in dispute in this case, and any line extended from or through this corner cannot be the true east boundary line of the King claim.

2. The law is well settled in this State that the actual location of the lines and monuments on the ground will control over courses and distances, and if such monuments can be ascertained the courses and distances must give way. *Raymond* v. *Coffey*, 5 Or. 132; *Goodman* v. *Myrick*, 5 Or. 65; *Lewis* v. *Lewis*, 4 Or. 178. The initial point of the King claim being undisputed, if the monument at the northeast corner of the claim as actually located can be ascertained, the boundary line in dispute will be a straight line from the initial point to such corner. Mr. King, one of the plaintiffs, is the only witness who undertakes to testify of his own knowledge concerning the actual location of this corner. He says that he saw Leland, the deputy United States surveyor, who surveyed his claim, set a post at the northeast corner thereof in 1859 or 1860, but that he cannot tell what became of the post or how long it remained, but thinks at least two years; that afterwards he fenced in a small field, the east line of which was on the line as surveyed by Leland, but he would not be positive whether he built the fence while the stake was there or not, but the witness tree was there. "Too long ago; can't tell when he fenced it, but the fence stood over twenty years and until new Fourteenth-street bridge was built. The fence was thirty or forty feet from the post and a little east of it. And the north end of the fence was thirty or forty feet from the east end of the bridge. Think the fence did not run quite up to the post. There was a pretty steep bank there—a kind of cove. It might be ten or fifteen feet from the post to the end of the fence. The fence run southerly something over two blocks, a block and a half. I would not be positive in this."

Mr. E. J. Jeffrey testifies that King pointed out the stake to him some twenty-one or twenty-two years ago. "My memory is that it was a wooden stake; nothing peculiar

about it that I can remember. B street has since been filled. This street has been filled over sixteen years, I think. Saw old fence supposed to be on the line. This fence was built in 1868 or 1869 and remained until new Fourteenth-street bridge was built in 1883. The stake pointed out to me by King was nearly thirty feet east of new Fourteenth-street bridge. The fence ran nearly parallel with the fence then and now standing west of the property claimed by Cavanaugh, Soderstrand and Brigham and Tufts. Don't understand the post I mentioned as the post to designate a corner of the King claim, with reference to the compromise line with Couch. All I know about it being the northeast corner in B street is what Mr. King told me."

J. E. Oliver, another witness for plaintiffs, says that prior to the building of the new Fourteenth-street bridge, there was an old fence that ran along. "To the best of my recollection, it started off the hill at this side of the gulch, about the end of the bridge in the south side; run north and would intersect B street about thirty feet east of Fourteenth-street bridge. That is as near as I can come to it, to the best of my recollection; everything has changed so. In some respects things have changed so in that neighborhood during the last fifteen years that my memory is very indistinct in regard to location; in other it is not. Don't know where the King east line is other than what Mr. King told me."

This is substantially all the testimony of plaintiffs as to the actual location of the northeast corner of the King claim. On the part of the defendant, W. S. Chapman testifies that while he was city surveyor from July, 1872, to July, 1874, he ran the east line of the King claim, commencing at the initial point and running on the course and for the distance called for in the original field notes of the survey, and that the line so run would bring the corner about fifteen or twenty feet north of the south line of B street and between seventy and eighty feet west of the west line of old Fourteenth street, and he thinks about

fifteen or twenty feet west of the east line of new Fourteenth street. Being asked if he discovered any post or witness tree in what is now new Fourteenth street in the north line of the King and south line of the Couch claim, he says: "I started from King's initial point and ran the course and distance which brought me to what ought to be his northeast corner. I then looked about for the witness tree called for in the notes. This I found, it having been blown over, falling northward; about one-half of the large roots on the main side of the tree being in the ground and still connected with the trunk of the tree, about thirty feet of which was still in tact, the balance of the tree having been cut up and hauled away. On this tree, on the under side thereof and a quarter of the way from the under side, from the middle of the under side, to the middle of the west side of the tree I discovered the letters 'C 51.' I should now think that that tree was fully thirty-six inches in diameter at the time I speak of. I made allowance by careful measurement so as to get the position of the bearing tree when it was standing erect. Then I laid off the course and measured the distance stated in the field notes, and at such distance set a post for the true northeast corner of the A. N. King donation land claim. I then ran the west line of old Fourteenth street and took the distance from the west line of old Fourteenth street to this corner as set by me, which distance I found to be seventy feet."

This corner claimed to have been found by Chapman corresponds with the description of this line as found in the field notes of the King survey. It appears from the testimony that soon after the Chapman survey, the old fence referred to by King, Jeffrey and Oliver was torn down and has never been replaced, and that parties owning property south of where the old fence stood moved their fences on to the line as surveyed by Chapman and have maintained them there ever since; and as far as the evidence in this case shows, without objection from King; and further, the testimony of Tufts and Mayer, who were

desirous of purchasing property along what is now the disputed line, tends to show that Mr. King did not claim that his line extended east of the line as run by Chapman. While the rule of law is as heretofore stated, that actual location of the lines and monuments on the ground will control over courses and distances, we think that where it is claimed that such lines and monuments do not agree with the courses and distances, the evidence of their actual location should be so clear and satisfactory as to establish that fact to the entire satisfaction of the court and to place beyond question the actual location of the line or monument. In this case, after a careful examination of the evidence, we are not satisfied that the actual location of the corner as claimed by King has been proven by that clear and satisfactory testimony the imperative requirements of the law demands. The stake only stood for about two years; no effort was made to preserve it; and the fence by which it is sought to establish the location of the corner was not built until 1868 or 1869, some six or seven years after it is admitted the stake disappeared. Mr. King himself could not have been very positive about the matter, else he would not have permitted the fence to be torn down after the Chapman survey, and especially he would not have permitted parties owning property along this line to have enclosed and occupied up to the Chapman line from 1874 to the commencement of this suit without objection on his part. So that if there was no other evidence as to the location of the corner but that offered by plaintiffs we would be compelled to hold it unsatisfactory; but when taken in connection with Chapman's testimony, we are irresistibly led to the conclusion that Mr. King must be mistaken as to the location of the stake set by Leland. It is true Mr. King attempts to account for the witness tree found by Chapman by saying that it must have been a witness tree for the stake set by the surveyor who surveyed his claim in 1850, and that afterwards Chapman, Lownsdale and himself, by mutual agreement, changed the line in question by making the corner further

east. If such an agreement was ever made, it must have been before King filed on his claim, for there is no evidence in this case of any change in his original filing, and the field notes of the survey made by Leland, some seven or eight years afterwards, correspond with the courses and distances given in the original notification. The court below found the true northeast corner of King's claim to be according to the Chapman line, but held the true east boundary line of the claim to be a line from the northwest corner of the Chapman claim to this corner, by commencing at the northwest corner of the Chapman claim to extend the line. For the reasons already stated, we think the learned judge was in error.

3. What has already been said about the uncertainty of the southeast corner of the King claim, as a proper monument from which to extend the east line of the claim, applies to the corner at the southwest corner of the Couch claim, with this additional suggestion, that the evidence shows that this corner was established by a surveyor who surveyed the Couch claim, and as a corner of that claim, and not of the King claim. The court below, while finding the northeast corner of the King claim to be as claimed by defendants, nevertheless held that the plaintiffs had acquired title by adverse possession up to the line as claimed by them as against appellants Brigham & Tufts. In this we think there was error. The evidence shows that Mr. King held this possession, under mistake or ignorance as to his true line, and with no intention to claim beyond the true line when discovered. Such a possession is not adverse, and cannot ripen into a title as against the real owner. *Caufield* v. *Clark,* 17 Or. 473; 11 Am. St. R. 845.

It follows, therefore, as to these appellants, the decree below must be reversed. And between them and plaintiffs the boundary line established was a line run as follows: Commencing at the point on the base line 3.00 chains east to the southeast corner of the southwest one-fourth of section 33, township 1 north, range 1 east, in Multnomah county, Oregon; running thence north 20° 15' east 20.60 chains to

a point near and intersecting the south line of B street in the city of Portland; and that this suit be remanded to the court below with directions to appoint commissioners as by law provided to locate and mark out the line as by this court determined.