Decided 24 November, 1902.

**GIST v. DOKE.**

[70 Pac. 704.]

ADVERSE POSSESSION—BOUNDARIES.

An unconditional and continued claim of ownership to a given line accompanied by exclusive possession for more than ten years constitutes adverse possession to such line.

From Marion: REUBEN P. BOISE, Judge.

42 OR.—15

Suit by Elizabeth Gist against Oscar Doke. From a decree for defendant plaintiff appeals.          AFFIRMED.

For appellant there was a brief over the names of *John H.* and *C. L. McNary,* with an oral argument by *Mr. John H. McNary.*

For respondent there was a brief and an oral argument by *Mr. William H. Holmes.*

MR. JUSTICE WOLVERTON delivered the opinion of the court.

This is a controversy respecting the proper location of the dividing line between the lands of the parties concerned. The plaintiff is the owner of the S. ½ of the S. E. ¼ of section 16 in township 9. One J. J. Blair was the original purchaser thereof from the state, and, upon an exchange of lands, assigned his certificate of purchase to the plaintiff, who subsequently completed payments thereon, and obtained a deed from the state, October 25, 1886. The defendant is the owner of the N. E. ¼ of section 21, which he acquired from the general government as a homestead. Blair having first entered it as a preemption, defendant purchased his right, and made a homestead entry instead. Some time thereafter, and while Blair was in possession of the land now owned by plaintiff, he employed Mr. Hammer, a competent surveyor, to locate the line between him and Blair. He testifies that Hammer showed them a post having the surveyor's marks upon it, which he said was set by one of the government surveyors, who surveyed to the center line of the township, and also a stone which he said was set by another government surveyor, who surveyed the whole township; explaining further that the latter failed to find the post, and consequently set the stone; that Hammer took the post as designating the original survey for his initial point, and ran due west for half a mile, and, not finding any marks, he said, "About here is your corner," and, witness and Blair having indicated their satisfaction respecting the line run, he piled up some rocks to designate the point; and that in the fall of 1877 witness built a fence on this line to the county road. It may

be explained, as it is shown by other testimony, that the fence constructed extended from the point designated by the pile of rocks to the county road, crossing near the house of the defendant, and about two thirds of the distance of the line surveyed. Much later, perhaps ten years prior to the trial of this case, plaintiff constructed a fence on this line from the road to the post or initial point of the Hammer survey. It was assumed, of course, that the post corrctly designated the northeast corner of section 21, and the northwest corner of the quarter section was established as indicated. The defendant has occupied and improved the land up to the fence ever since it was constructed, and no question ever arose as to it not being the true government dividing line until some two or three years before the commencement of this suit.

For the purpose of locating the true line, the plaintiff had a survey made by Herrick, the county surveyor. Herrick was not called as a witness in the case, but Taylor, who acted as one of the chain carriers, testifies, in substance, that Herrick started from a pile of rocks which was located by him from certain witness trees designated in the field notes, one of which he says he was unable to find, as the southeast corner of plaintiff's land, and ran west to the southwest corner, which he located by a witness tree then standing, and by a stump which was assumed to have been another, and that the line surveyed ran to the south of Doke's fence. This is the line which plaintiff is now claiming. Some time later the defendant employed Davenport and Whitlock to make another survey, and furnished them with the field notes from the land office, by which to guide them in their work. Mr. Davenport states that they commenced at the northeast corner of the south section, found what they called "bearing trees," two in number, the same being blazed in manner as required by government instructions, but that the lettering had been effaced by fire, and from these, with the field notes, they established the corner which corresponded with that ascertained and established by Herrick, the county surveyor; that from this point they ran west 40 chains (not knowing the exact bearing), where they found a

fir tree standing similarly to the government bearing tree, and from that, taking the distances and directions, they established another corner; that, from the field notes, it was evident the county surveyor had mistaken the bearing tree, and, assuming another to be the one, they established the corner from that some 50 links north of that established by the county surveyor; and that the old line fence at the east end is about 50 links north of the line they run. The plaintiff's son testifies that Herrick's survey at the east end is about 30 feet south of the old fence, and at the west end 6 or 8 feet south. Thus it may be seen that the land in dispute consists of a strip one half mile long, about 30 feet in width at one end, narrowing to 6 or 8 feet at the other. It is very evident that little dependence can be put in the surveys. No two of them agree, those made by Hammer and Herrick coming nearest. The Davenport survey, while commencing at the same point as that of Herrick, diverges to the north, and terminates some 50 links distant, and actually across the Hammer survey near the center, terminating some 40 links to the north of it. These differences arose, undoubtedly, from the difficulty of ascertaining the true government corners; the bearing trees having been so effaced and destroyed as to make it impossible to locate them with any degree of certainty. Hammer's survey being made much nearer to the time of the government survey, it is more likely to be correct, he having had better facilities for ascertaining the true monuments upon the ground.

However this may be, if defendant has occupied, as he claims, adversely to all persons whomsoever, up to the Hammer line, for more than ten years continuously, prior to the commencement of this suit, he must prevail, regardless of whether that is the true boundary line or not, according to the government survey. The defendant, testifying relative to the subject, says that he honestly believed all the while that the fence erected on the line run by Hammer was on the true line, and that his motive for holding the land was that he believed it belonged to his quarter section. In his further examination he answered, as interrogated, as follows: "Q. As a mat-

ter of fact you have never claimed any land as belonging to
you at that place, in that section, excepting the northeast quar-
ter of section 21? A. That is all I claim to own. I claim that
to be the line. Q. That is all you claim to own,—all you ever
claimed? A. I claim that line fence. Q. Do you claim any
other land in the section and township and range, excepting
the northeast quarter of section 21? A. No.'' At another
time he admits that he said in the presence of certain parties
that he ''didn't want any of Gist's land. Not intentionally.''
And on redirect: ''Q. If I understand you correctly, you
say you always claimed that line where the fence is. A. Yes.
Q. Since you agreed to that line between you and Blair?
A. Yes.''

The plaintiff went upon her place about two years after the
fence was constructed, which would be about the year 1879,
and occupied it without a question as to its being upon the
true line until about 1897, or about eighteen years, when this
controversy arose. Now it is insisted by plaintiff's counsel
that defendant's occupancy beyond the true boundary line·
between him and plaintiff has not been, according to his own
testimony, adverse to the plaintiff, because it was not under a
claim of right. It must be conceded that such a claim in hos-
tility to the true owner is an essential ingredient to adverse
possession, and the *quo animo* with which the possession was
taken and held has much to do with it. Counsel for defendant
contends that, although the entry may have been under a mis-
take of fact as to the true line, yet the holding may be adverse,
if under a claim of right. The two phases of the legal princi-
ple involved find exposition in the decisions of this court. In
*King* v. *Brigham,* 23 Or. 262, 281 (31 Pac. 601, 18 L. R. A.
361), the holding, if at all, was under a mistake and in ignor-
ance of the true line, but with no intention of claiming beyond
it when ascertained, and it was held that it lacked the quality
of an adverse holding. But in *Ramsey* v. *Ogden,* 23 Or. 347
(31 Pac. 778), it was held that in case of a person inclosing
land of another by mistake, claiming it as his own, actual pos-
session will work a disseizure of the owner. *Caufield* v. *Clark,*

17 Or. 473 (21 Pac. 443, 11 Am. St. Rep. 845), and *Rowland* v. *Williams*, 23 Or. 515 (32 Pac. 402), are to the same purpose. The two phases are brought into juxtaposition in *Walbrunn* v. *Ballen*, 68 Mo. 164,—a case cited in *Ramsey* v. *Ogden*. Mr. Justice HENRY says: "If one by mistake inclose the land of another, and claim it as his own, his actual possession will work a disseizure; but if, ignorant of the boundary line, he makes a mistake in laying his fence, making no claim, however, to the land up to the fence, but only to the true line as it may be subsequently ascertained, and it turns out that he has inclosed the lands of the adjacent proprietor, his possession of the land is not adverse." The defendant, while disclaiming any design of encroaching upon the land of the plaintiff, very early procured the Hammer survey to be made, with the express purpose of locating the true line; and, when completed, he and Blair, the predecessor of plaintiff then in possession, were mutually satisfied with it, and by tacit understanding adopted it, as the dividing line between them. Ever since that date defendant has been claiming that as the true line, and, of course, has claimed title to the land on his side up to the line. A fence was constructed by defendant upon the survey for two thirds of the way, and this was supplemented later by plaintiff, covering the whole distance. When asked if, as a matter of fact, he claimed any land as belonging to him, except as contained in the northeast quarter of section 21, he answered: "That is all I claim to own. I claim that to be the line." Beyond this, he testifies that he supposed the Hammer survey designated the true line, and honestly believed that the land he was holding belonged to his quarter section. This is the whole case in a nutshell. Believing this to be the true line, he acted upon it, and constructed his fence, and claimed title thereto. There was no condition attached to his claim, such as if the survey proved to be erroneous. He laid no claim beyond the true line, but his claim was absolute, both as to the line from the time the survey was made, and to the title of the land upon his side of it. He repudiated the Herrick survey, and, to further satisfy himself, employed two other surveyors

to run the line; but they served only to complicate the matter, and he stood by the Hammer survey, as he had always done since it was made. There can be no question that his holding was of such a nature as to make it adverse, whatever might have been his encroachment upon the land of the plaintiff. This renders it unnecessary to determine the true line according to the government survey, as the Hammer survey, by reason of defendant's adverse holding, has become the dividing line between the parties.                                    Affirmed.