Argued Jan. 3, decided Jan. 10, rehearing denied Feb. 28, 1911.

## DUNNIGAN v. WOOD.

[112 Pac. 531.]

ADVERSE POSSESSION—ENTRY AND POSSESSION BY MISTAKE—INTENTION
    —EFFECT.

1. Where a party holds possession of land under mistake or ignorance as to the true line and with no intention to claim beyond the true line, when it should be discovered, his possession is not adverse.

ADVERSE POSSESSION—HOSTILE CHARACTER OF POSSESSION—EVIDENCE—
    PRESUMPTIONS.

2. Actual, open, notorious, distinct, and continuous possession of real property under a claim of right, and not inconsistent with the other

acts of the party or with the circumstances of the case, raises a presumption that such possession is hostile to all other claimants.

ADVERSE POSSESSION—INCLOSING LAND BY MISTAKE—CLAIM OF TITLE—EFFECT.

3. Where a person incloses land of another by mistake, claiming it as his own, actual possession will work a disseisure of the owner.

ADVERSE POSSESSION—TITLE ACQUIRED BY ADVERSE POSSESSION—EVIDENCE.

4. In a suit to determine the ownership of a strip of land along the boundary between defendant's and plaintiff's land, evidence *held* to show defendant's actual, notorious, continuous, undisturbed, and hostile possession of the land in dispute, under a claim of right, for more than forty years prior to plaintiff's assertion of title, sufficient to vest title in · defendant by adverse possession.

From Marion: WILLIAM GALLOWAY, Judge.

Statement by MR. JUSTICE BEAN.

This is a suit by Edward A. Dunnigan against Amer Wood and Jacob Ogle, his guardian, to determin the ownership of a strip of land along the entire south line of defendant's land, 87 links wide at the east and 72 links wide at the west end, containing about five acres; the south line of defendant's and the north line of plaintiff's land being a common boundary. Dividing the two farms is an old rail fence, constructed by the predecessors of plaintiff and defendant more than 45 years ago; the strip of land in dispute being north of the old fence. Defendant denies ownership in plaintiff, alleges ownership in himself, and pleads possession, and title by prescription. The lands of the plaintiff and defendant are portions of the Donation Land Claim of Thomas C. Howell, in township 6 south, range 2 west of Willamette meridian, Marion County, State of Oregon. Plaintiff purchased his land about two years before the commencement of this suit from one Charles Arnold, at a given price per acre; Arnold claiming pay for 165 acres. A survey was made, and, for the first time, it was claimed that the old fence was not on the line, and something like five acres of the Arnold land was within

Wood's inclosure. The court below found in favor of the plaintiff, and entered a decree accordingly, from which defendant appeals.     REVERSED.

For appellant there was a brief with oral arguments by *Mr. John A. Jeffrey* and *Mr. George G. Bingham.*

For respondent there was a brief with oral arguments by *Mr. William M. Kaiser* and *Mr. Myron E. Pogue.*

MR. JUSTICE BEAN delivered the opinion of the court.

There is no conflict in the testimony in the case. The contention is as to the effect or deductions to be drawn from the testimony, or from the facts as disclosed thereby. It appears that the defendant's land and a tract on the east, not in question, was conveyed by Howell to one Swegle, November 29, 1858, and described as follows:

"Commencing at the northwest corner of our land claim at a stake; thence east 101 chains and 81 links to a stake; thence southwest 78 chains to a stake; thence west 23 chains and 31 links to a stake; thence north 42 chains and 3 links to a stake; thence west 76 chains and 13 links to a stake; thence north 37 chains and 2 links to the place of beginning, containing 480 acres of land be the same more or less. Said described land is a part of our donation, notification No. 291, claim No. 47."

On May 17, 1865, the land of the same description was conveyed to the defendant Wood. On November 11, 1858, Howell conveyed to Pleasant Howell the premises now owned by plaintiff, and described them as follows:

"The same being in Marion County, O. T., in township 6 south, range 2 west of the Willamette meridian, commencing at a stake three rods north of the township line at a stake; thence west 76 chains and 15 links to a stake; thence north 21 chains 87 links to a stake; thence east 76.15 chains to a stake; thence south 21 chains 87 links to a stake, being the beginning corner, containing 160 acres of land be the same more or less. Said

described land is a part of our donation claim under the act of Congress approved September 27, 1850, notification No. 291, claim No. 47, as on file in the surveyor's office in Oregon Territory."

On June 8, 1859, Howell coveyed to one Buford, and on October 3, 1862, Buford, by the same description, conveyed to plaintiff's predecessor, Charles Arnold.

It appears from the uncontradicted testimony that the rail fence was constructed some time prior to 1862; that there are trees from five to fifteen inches in diameter, and apparently from 20 to 30 years old, growing along and in the corners thereof; that the defendant Wood, during his ownership, has resided upon, cleared, and cultivated his land, and, for a portion of the distance, close to the fence in question; that in the eastern part, next to the fence, there was a garden; and that, for a portion of the way, the fence is constructed through timber and brush. It also appears that Arnold, plaintiff Dunnigan's predecessor, during about the same time resided upon his land, and cleared and cultivated a portion thereof to the line of the fence mentioned. That each of the respective parties, during all that time of more than forty years, recognized the old worm fence as the true division line between the two tracts, contributing their portion in building and maintaining the fence, which for that purpose, was divided into four sections, and each party, in erecting his portion thereof, constructed it on his own land, making slight offsets in the fence, except that at the west end, running up and down a hill for about 100 feet (in order to obtain a better grade,) the line of fence was varied by defendant Wood, and constructed on his own land.

According to the survey of plaintiff's land, made by the county surveyor, beginning at the re-entrant corner of the Thomas C. Howell donation land claim, which, according to the government field notes, is one chain and

eight links north of the township line, and running north 21.87 chains (to a point 87 links north of the rail fence on the line as claimed by the defendant) ; thence west 76.15 chains to the west line of Thomas C. Howell's claim; thence south 21.87 chains to the southwest corner of the claim (a point located from witness' trees) ; thence east 76.15 chains to place of beginning, making the line, as claimed by plaintiff, 87 links north of the fence at the northeast corner and 72 links north of the fence at the northwest corner of plaintiff's land, it would embrace, within defendant's inclosure, about five acres, the premises in dispute. That, when the survey was made, the stakes mentioned in the deeds were, and had been for a long time prior thereto, obliterated. That the township line near these points is in cultivated fields, with nothing to mark its location, and that the surveyor, in running the south line of defendant's land, followed along an old fence between the Thomas C. Howell donation land claim and the John Howell donation land claim.

1. The contention of the plaintiff is that the possession by defendant of the land in controversy was not adverse to plaintiff's rights. If the claim of the defendant, as alleged in his answer, that he has been in the open, notorious, exclusive, and adverse possession of the strip of land, under claim of right, for more than ten years is sustained by the evidence, it is decisive of this case, regardless of where the line between the two tracts originally should have been located.

Plaintiff cites the cases of *King* v. *Brigham,* 19 Or. 570 (25 Pac. 150), and 23 Or. 262, 281 (31 Pac. 601, 606: 18 L. R. A. 361), as applicable to the facts herein. In the latter case, it appears that the plaintiff occupied land up to a fence, or the line, as he alleged, because he believed it to be the true boundary, but without any intention of claiming thereto, if it should be determined by the suit to be beyond the true line; that at the time of

the second suit, the plaintiff, by a leading question, was made to claim to own the land in controversy, whether covered by his patent or not, concerning which Mr. Chief Justice LORD said:

"But claims of this sort, unless consistent with the acts of the parties and other circumstances of the case, are not very satisfactory proof to establish title by adverse possession to the lands covered by title of others."

In the opinion in the first case at page 570, 19 Or., (at page 153, 25 Pac.), it is noted by Mr. Justice BEAN that "the evidence shows that Mr. King held this possession, if at all, under mistake or ignorance as to his true line, and with no intention to claim beyond the true line when discovered. Such a possession is not adverse and cannot ripen into a title as against the real owner"—citing in support thereof *Caufield* v. *Clark*, 17 Or. 473 (21 Pac. 443: 11 Am. St. Rep. 845).

2. However, the facts in the case of *King* v. *Brigham* differ materially from the one at bar. In this suit the fence between the plaintiff's and defendant's tracts was constructed soon after the execution of the deeds describing stakes at the ends of the division line, and the circumstances do not indicate that there was any mistake in the general location of the fence, but rather that it was built while the line dividing the tracts was evidenced by stakes, and was therefore the true boundary line. All of the acts of the defendant and of the predecessors in interest of the plaintiff, and the circumstances of the case relating to the occupancy and cultivation of the respective tracts, and the construction and maintenance of the division fence ever since 1862, show the possession of the land by defendant was complete and rightful and adverse to plaintiff, and not subservient to any title asserted by the latter. Actual, open, notorious, distinct, and continuous possession of real property, under a claim of right, and not inconsistent with the other acts of the

party or circumstances in the case, raise a presumption that the possession is hostile: *Greene* v. *Anglemire,* 77 Mich. 168, 172 (43 N. W. 772).

In *Meyer* v. *Hope,* 101 Wis. 125 (77 N. W. 720), the court says:

"The doctrine that evidence of adverse possession must be construed strictly and every reasonable presumption be made in favor of the true owner is well understood, but that does not avail against the fact of exclusive, notorious, unexplained, continuous, occupation for the requisite period to acquire title by prescription. When that is. established, it is conclusive as to the nature of the possession, till rebutted by some satisfactory evidence. It overcomes the presumption previously existing in favor of the true owner, and a presumption arises from the facts in favor of the occupant, that his occupancy was characterized by all the other elements requisite to adverse possession. * *"

3. In *Gist* v. *Doke,* 42 Or. 225 (70 Pac. 704), Mr. Justice WOLVERTON, citing *Ramsey* v. *Ogden,* 23 Or. 347 (31 Pac. 778), says:

"It was held that in case of a person inclosing land of another by mistake, claiming it as his own, actual possession will work a disseisure of the owner."

See, also, *Caufield* v. *Clark,* 17 Or. 473 (21 Pac. 443: 11 Am. St. Rep. 845).

4. We think it clearly shown by the evidence on the part of defendant that he has been in the actual, visible, notorious, exclusive, continuous, undisturbed, and hostile possession of the land in dispute, under a claim of right, for more than 40 years prior to plaintiff or his predecessor asserting any claim to the tract in dispute: *Cooper* v. *Blair,* 50 Or. 394 (92 Pac. 1074). That the defendant is the owner in fee simple, and entitled to the possession thereof. That the general line of the old fence, not following the slight curves through the timber, or the angles or the diversion at the west end on the side of the hill, is

the true boundary line between the tracts of land of plaintiff and defendant.

It follows that the decree of the lower court must be reversed, and one entered here in accordance herewith.

REVERSED.