Argued April 6; affirmed April 25, 1933

## NEWTON ET AL. *v.* McKEEL
### (21 P. (2d) 206)

*C. A. Wintermeier,* of Eugene, for appellant.

*James K. King,* of Eugene (Charles A. Hardy, of Eugene, on the brief) for respondents.

BAILEY, J. The complaint alleges and the answer admits that the plaintiffs are the owners of the following described property:

"Beginning at the quarter corner between sections 20 and 29 and running thence west 1.50 chains, thence south 75 links to the southeast corner of the Issac Massey D. L. C. No. 39, thence westerly 6.08 chains to the northeast corner of the C. Johnson D. L. C. No. 41, thence west 39.70 chains to the northwest corner of said claim No. 41, thence south 12.43 chains, thence east 12.92 chains, thence south 17.87 chains, thence south 82 degrees 25 min. E. 34.00 chains to the quarter line running north and south between the east and west halves of section 29, thence north 39.20 chains more or less to the place of beginning, containing 125.22 acres of land more or less all in sections 29 and 30 Twp. 22 south of of range 3 west of the Willamette meridian, in Lane county, Oregon";

and that the defendant is the owner of a tract of land described as follows:

"Beginning at the northeast corner of the Melvin Anderson Donation Land Claim, Notification 953 in section 30, township 22, south range 3 west of the Willamette meridian, thence west 20 rods to the center of the channel of the Coast Fork river, thence southeasterly along said channel to the point where the east line of the said D. L. C. crosses said river, thence north to beginning".

The complaint further alleges that there is a controversy or dispute between plaintiffs and the defendant concerning the exact location on the ground of the common boundary or dividing line; that the plaintiffs have offered to defendant to have the same surveyed and determined by competent surveyors; and that the defendant has failed and refused to assist or cooperate with plaintiffs in the establishment of this line. The

defendant admits that there is a dispute concerning the exact location on the ground of the common boundary or dividing line, but denies the balance of the allegation last above mentioned.

For a further and separate answer the defendant avers that the true common boundary line between the properties of the parties is as described in the complaint, and admits that there is a dispute between the parties as to its location, but alleges that there is no uncertainty as to its location, stating that the northeast corner of the Melvin Anderson donation land claim and the northwest corner of the C. Johnson donation land claim is marked by a heavy fence post, describing the location thereof; that said post marks the original site of said corner as the same was marked and located by the United States government; and that said boundary line is a straight line between the northeast and the southeast corners of said Anderson donation land claim. In her prayer defendant asks that the boundary line be established as specified in her affirmative defense.

It appears from the evidence that the plaintiffs acquired title to their tract of land in 1924 and that at that time there was an old fence, claimed by defendant to be the true boundary line, running south from the post which defendant in her affirmative answer alleges to be the corner of the two donation land claims. The land to the west of plaintiffs' tract was then owned by one Thomas Orr, who died in 1928 and from whose estate the defendant acquired title to her land. Before Mr. Orr died, however, and at least two years before defendant acquired title to her land, another fence was built, at the instance of plaintiffs, some fifty or fifty-two feet west of the old fence and on the location des-

ignated by Mr. Orr. This new fence was not removed until after defendant purchased her land, and the evidence indicates that some one on her behalf removed it. The uncontradicted testimony of Mr. Newton, one of the plaintiffs, in reference to the new fence is as follows:

"Q. These fences were changed before Mr. McKeel became interested in the property?

"A. Yes; at least two years before that.

"Q. How was the location of the new fence determined?

"A. Mr. Orr sighted it through from the line south.

"Q. He was the man who owned the land Mr. McKeel owns now?

"A. Yes. I used to go through there to work. I used to take my car to work and he said he would sight it through and put up some stakes and if they were satisfactory to me we would build the fence there.

"Q. Mr. Orr, who owned the land at that time, told you where to build the fence?

"A. Yes.

"Q. And he marked it off himself?

"A. Yes, as near as he could sight through".

In an attempt to prove that the old post referred to in her affirmative defense was the true corner of the donation land claims and that the old fence was the true boundary line between the properties of the litigants, defendant called as a witness John Massey, who stated that he had always believed that the post marked the corner, until about twenty years previously, when John Small, the owner of the Johnson claim and a predecessor in interest of the plaintiffs, said that a survey had been made by a competent surveyor and that the corner was found to be "over in some elder bushes . . about in the center of the elder bushes," where the new fence was later built.

The evidence is uncontradicted that the old fence was in one unchanged location for from forty to sixty years, but there is no testimony to the effect that the owners of the land on either side of the fence were claiming to the fence regardless of whether or not it was located on the boundary line between the two donation land claims, with the exception of the testimony of defendant's father, as follows:

"Q. With refernce to Mr. Orr, state whether or not he always claimed to the fence.

"A. As far as I know he always did, and he never surrendered his right to it even after he was dead, or until it was deeded over to the bank".

It appears from the evidence that the common corner of the two donation land claims mentioned had been established by the official government survey with reference to the common corner of certain sections and that the monument designating this point could not be located. Two civil engineers were called as witnesses by the defendant and both testified that the northwest corner of the Johnson donation land claim and the northeast corner of the Anderson claim could be located, if the monument designating the starting point had been lost, from other government monuments.

The case was tried on September 17, 1931, and taken under advisement. On January 21, 1932, the defendant filed a motion, supported by an affidavit, asking permission to file an amended or supplemental answer, claiming title to all the land west of the old fence and east of the property described in the deed to her, if any, by adverse possession, the contention being that the defendant had intended to purchase from the estate of Thomas Orr, deceased, all the land lying west of the

fence. In support of her motion to file this new pleading, defendant claimed that on January 10, 1932, she had acquired by deed from the estate of Thomas Orr, deceased, all the land west of the fence and that he had been in the active, open and notorious possession of this land for more than the statutory period. The court denied this motion and entered a decree describing the true location of the common boundary or dividing line between the lands of plaintiffs and those of defendant as follows: "beginning at the northwest corner of the C. Johnson D. L. C., No. 41 in Lane county, state of Oregon, and running thence south 12.43 chains," and appointed the Lane county surveyor, the deputy surveyor and another surveyor as a board of commissioners to go upon the land and mark by proper marks and monuments the said boundary or dividing line. The decree also provided that all expenses and charges of said commissioners in carrying out the decree of the court should be taxed against the defendant; that the plaintiffs have judgment against the defendant for such charges and expenses; and that plaintiffs recover costs and disbursements.

Defendant assigns as error the court's refusal to permit her to file an amended or supplemental answer after the cause had been submitted to the court for its decision. It will be noticed that had the filing of this supplemental or amended complaint been permitted, an entirely different issue would have been raised from that on which the case was tried. This would have changed the nature of the proceeding from one in equity to establish the boundary line to one at law for the termination of the ownership of real property and the equity court would thereby have lost jurisdiction of the cause. *Dice v. McCauley*, 22 Or. 456 (30 P. 160); *Andrews v. Brown*, 56 Or. 253 (108 P. 184).

■ There was no substantial evidence in the case that the defendant's predecessors ·in interest ever claimed the land west of and to the old fence, by adverse possession. In fact, the building of the new fence, some fifty feet west of the old one, with the consent and co-operation of Mr. Orr and on the location designated by him, is evidence of the fact that Orr was not so claiming the land. Even when one in possession is occupying land up to a fence because he believes it to be the true boundary line but without any intention of claiming the same if it should be determined that the fence is not the true boundary line, he acquires no title by adverse possession beyond the true boundary line: *Caufield v. Clark*, 17 Or. 473 (21 P. 443, 11 Am. St. Rep. 845) ; *King v. Brigham*, 19 Or. 560 (25 P. 150) ; *Dunnigan v. Wood*, 58 Or. 119 (112 P. 531) ; *Anderson v. Richards*, 100 Or. 641 (198 P. 570).

■ In view of the evidence in the case and the fact that the application to file a supplemental answer was not made until long after the cause had been submitted to the court, and the further fact that ·the proposed amended or supplemental answer would have raised entirely different issues, unsupported by the evidence already introduced, the court did not commit any error in denying defendant's motion: Section 1-906, Oregon Code 1930.

The first assignment of error discussed by defendant is that where title to land is involved the court has no jurisdiction to proceed to determine the boundary line. Although this question was the first one raised by the appellant, we deemed it advisable to dispose first of the question of whether or not defendant should have been granted permission to file a supplemental or amended answer. Since that has now

been disposed of adversely to defendant's contention, and as both the plaintiffs and the defendant agree as to the legal description of their respective parcels of land and admit that there is a dispute concerning the true boundary line, the main question for consideration is that of the location of the line on the ground.

■■ It is true, as contended by defendant in her third proposition of law, that the actual location of lines and monuments on the ground will control over courses and distances, and that if such monuments can be found the courses and distances must give way. There appears, however, in this case a serious dispute as to whether or not the common corner of the donation land claims hereinbefore referred to is at the point contended for by the defendant. The evidence introduced does not clearly establish the old fence post as marking this corner. The fact that this post and the old fence had been in a certain location for many years might well be taken into consideration by the commissioners in making their survey and by the court in passing upon the report of the commissioners in the event there is any uncertainty as to the location of the boundary line. The evidence of common reputation of this fence as the boundary line is not clear and convincing, and, inasmuch as the predecessors in interest of the litigants herein had expressed a doubt as to whether or not the old fence was the true dividing line, the court did not err in not decreeing that the same marked on the ground the boundary line.

Section 6-1103, Oregon Code 1930, provides that the proceeding for ascertaining and establishing boundaries shall be analogous to other suits in equity and that the court shall at the time of entering its decree fix the true location of the disputed boundary

or dividing line, appoint three disinterested commissioners, one of whom shall be a practical surveyor, and shall direct the commissioners to go upon the land of the parties and establish upon the ground by proper marks and monuments the boundary or dividing line as ascertained and determined by the court in its decree. Under section 6-1104 the commissioners are required to file their report, and when the same is approved or confirmed by the court it becomes a part of the judgment roll. Section 6-1105 provides that the parties concerned are given a right to file exceptions to the report and to have a hearing thereon, and that the court shall confirm, modify or set aside the report. In case the report is set aside the court may appoint a new commission or may re-refer the matter. to the same commissioners with appropriate instructions.

From the record before us it does not appear that the commissioners appointed by the court have made their report, and if the parties deem that the report when made does not conform to the facts they have a right to except thereto and be heard. Until the court shall have established on the ground, with the assistance of the commissioners appointed by the court, the true boundary line between the properties of the parties herein, it is impossible to state the location thereof with reference to the old fence. Although the plaintiffs appear to have had an understanding with defendant's predecessor in interest that the true boundary line was some fifty feet west of the old fence, nevertheless they have shown a desire to have it established with reference to the government survey and according to the description in their deed.

■ As already mentioned, the court assessed to the defendant the cost of the survey as well as other costs

incident to suit. It appears that the plaintiffs did all in their power to induce the defendant without litigation to agree to a survey and offered to pay half the expenses connected therewith, but the defendant refused to join in such an arrangement. We believe that the costs of the suit, apart from the expense of making the survey, should be assessed to the defendant. The expenses, however, connected with the survey should be charged equally to the plaintiffs and the defendant. Even though the evidence had shown that the boundary was already plainly indicated by a fence or otherwise, it became the duty of the court to appoint a commission to mark out on the ground the boundary as ascertained by the court: *Vandusen v. Shively,* 22 Or. 64 (29 P. 76); *Robinson v. Laurer,* 27 Or. 315 (40 P. 1012); and the refusal of one of the parties to agree to a private survey does not warrant charging the entire expense incident to a survey of this nature to only one of the parties benefited by it. With the modification above noted the decree of the circuit court is affirmed, neither party to recover costs or disbursements in this court.

RAND, C. J., BEAN and CAMPBELL, JJ., concur.