Argued 4 May ; decided 2 June, 1903.

**KILLGORE v. CARMICHAEL.**

[72 Pac. 637.]

</div>

WAIVER OF OBJECTION BY ASKING AFFIRMATIVE RELIEF.

1. In a suit in equity to establish a controverted boundary between adjacent lands, defendant admitted the dispute, and prayed that the boundary be established on the line claimed by him. *Held,* that by this prayer defendant waived any objection to the jurisdiction of the court to establish the boundary.

DECREEING TITLE TO LAND BETWEEN DISPUTED BOUNDARIES.

2. Where a court of equity obtained jurisdiction to ascertain and determine a disputed boundary line, it had authority to decree who was the owner of the land lying between the boundary lines contended for.

EVIDENCE CONSIDERED.

3. A careful consideration of the evidence satisfies the court that the decree correctly determined the location of the line in dispute.

BOUNDARIES—MONUMENTS AND DISTANCES.

4. In determining a disputed boundary line between adjacent lands, the line as actually run on the ground in making the original survey controls the distance given in the surveyor's field notes.

From Umatilla: W. R. ELLIS, Judge.

Suit to establish a boundary line by J. F. Killgore against George Carmichael, resulting in a decree for plaintiff, from which this appeal is taken.                          ·AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Thomas G. Hailey.*

For respondent there was a brief over the names of *Sharpstein & Sharpstein* and *Stillman & Pierce,* with an oral argument by *Mr. A. D. Stillman.*

MR. CHIEF JUSTICE MOORE delivered the opinion of the court.

This is a suit to ascertain and establish a controverted boundary between adjacent lands. It is alleged in the complaint that plaintiff is the owner of the southeast quarter of section 33, in township 5 north of range 35 east of the Willamette Meridian, and that defendant owns the southwest quarter thereof; that a controversy exists between the parties hereto concerning the line dividing these tracts of land; that for more than twenty years prior to 1898 the line was marked by a fence beginning at the southwest corner of plaintiff's land, and running thence to the northwest corner. thereof, but in that year the defendant moved the fence, and rebuilt it, from plaintiff's southwest corner, in such manner that the north end thereof extends 2.85 chains too far east; and that the boundary should be established on the line occupied by the fence prior to its removal. The answer admits the existence of a dispute concerning the boundary, denies the other material allegations of the complaint, and avers that the dividing line begins at the quarter post on the south side of said section and runs thence north, parallel with the east boundary thereof, until it intersects the line dividing the section into north and south halves. For a further defense it alleges that the fence rebuilt in 1898 was constructed wholly upon defendant's premises, and is now thereon. A reply having denied the allegations of new matter in the answer, a trial was had, resulting in a decree as prayed for in the complaint, and that plaintiff is the owner and entitled to the immediate possession of the land lying between the

line of the old fence and that upon which it was rebuilt, and the defendant appeals.

1. It is contended by defendant's counsel that the title to the tract of land situated between the lines of the old and new fences was not in issue, and hence the court erred in decreeing that plaintiff was the owner and entitled to the possession thereof, and that a court of equity is powerless to try the title to real property. It will be remembered that the existence of a dispute between the parties concerning said boundary is admitted. An examination of the answer shows that the defendant, in his prayer for affirmative relief, asks that the boundary be established on the line described in the answer. Such prayer waives any objection that might have been urged against the right of a court of equity to ascertain and establish the controverted boundary: *Kitcherside* v. *Myers,* 10 Or. 21; *O'Hara* v. *Parker,* 27 Or. 156 (39 Pac. 1004).

2. In every suit to ascertain a lost boundary the title to the land lying between the lines contended for by the respective parties is incidentally involved, and the establishment of the boundary necessarily determines the legal title thereto. A court of equity secures jurisdiction of the subject-matter in suits of this character by the filing of a complaint containing the necessary averments (B. & C. Comp. § 519), and, having obtained the right to hear and determine the issue, it is also authorized to grant any relief incident thereto. If, therefore, the trial court correctly ascertained and established the line in dispute, no error was committed in decreeing that plaintiff was the owner and entitled to the immediate possession of the land lying between the lines of the old and the new fence.

3. Considering the case upon its merits, the transcript shows that said township was surveyed about 1865, and that undisputed monuments are to be found at all points where stakes were originally set to mark the boundary and to indicate the chief subdivisions of said section 33, except the quarter post on the north side thereof. A copy of the field notes of this section, introduced in evidence, contains what purports to be a statement of the length of the north boundary and the method

pursued in locating the quarter post therein, commencing at the northwest corner of the section, as follows: "East on random line between sections 28 and 33, township 5 north, range 35 east, 40.00 chains, set temporary quarter-section post; 80.10 chains intersect north and south line at post, from which I ran west on true line 40.05 chains, set post corner for quarter section. Drove charred stake, dug pits, and raised mound as per instructions." It is conclusively shown that the length of the north boundary of section 33 is 91.63 chains, that of the south boundary is 80.16 chains, and that the east boundary is a north and south line. The north boundary being 11.47 chains longer than that of the south, and the east boundary a north and south line, a moment's reflection will demonstrate that the west boundary was originally run in a northwesterly direction. This section is rolling prairie land, and was at one time granted by Congress in aid of the construction of a railway, but the grant was declared forfeited about 1891, and the improvements made thereon prior thereto were not of a very substantial character. Though it will be presumed that official duty has been regularly performed, the discrepancy in the respective lengths of the north and south boundaries of section 33 overthrows this presumption, and tends to prove that the person who made the original survey never ran the random line on the north boundary the entire length indicated in the field notes, for, if he had done so, he would have discovered the error in running the west boundary. The plaintiff's contention is that the quarter post on the north side of section 33 was originally set in a mound of earth 40.17 chains east and 43 links south of the northwest corner of that section, and that a line run from this point to the quarter post on the south side of the section will show that the north end of the defendant's fence extends 2.85 chains too far east. The defendant insists, however, that the point at which the quarter post on the north side of the section was originally set cannot be found, and, this being so, it should be located in a right line and midway between the northwest and the northeast corners of the section, from which a line extending to the quarter post on the south side will prove that

his fence is not built upon plaintiff's land. The testimony conclusively shows that pits were dug and a mound raised at the point where it is claimed by plaintiff that the quarter post was originally set on the north boundary of said section. This mound was seen, about 1876, by the witnesses William Anderson, Robert Walker, and James Derrick, the latter saying that he thought he saw a stake standing therein. The witness Hezakiah Kay says that in 1875 or 1876 he saw a stake having figures thereon standing in the middle of the mound, and this stake was seen standing at that point by the witnesses James Killgore and Thomas Moore, the latter saying that in the spring of 1877 the stake was broken off by being struck by a double-tree in plowing. The witness Derrick, who in 1875 owned the quarter section joining the northwest quarter of section 33 on the north, says that about 1879 he built a fence from the mound referred to north along the east boundary of his land.

The witness Walker, who about 1879 had a possessory right to the northeast quarter of section 33, says that he commenced at said mound, and built fences along the west and north boundaries of the land so claimed by him. The witness Kay, having thereafter secured the right of possession of the east half of section 33, desired to build a fence along the west border of his claim that would turn hogs, but because the persons who claimed the west half of the section would not join in making such improvement, he put up a new fence, which was placed six feet east of the one so built by Walker. The defendant secured possession of the southwest quarter of section 33, and, in order to ascertain the east boundary thereof, employed a surveyor, who, being unable to find any relic of the quarter post in the line indicated by the fences built by Derrick and Walker, located it midway between the northwest and the northeast corners of the section, from which he extended a line to the quarter post on the south. The defendant, in August, 1898, tore down the south half of the fence erected by Kay, and rebuilt it upon the line located by the surveyor so employed by him. In March, 1899, several persons digging

near the center of the county road, which had been opened along the north boundary of section 33, in line with the fences that formerly ran north and south from said mound, found, about eight inches beneath the surface, the end of a rotten, charred stake, and, without removing it, sent for J. W. Kimbrell, a surveyor, who took it up, and as a witness for plaintiff states that, in his opinion, it is a part of the stake originally set for the quarter post on the north side of section 33. The testimony shows that, though the part of the stake found was very rotten, it bore unmistakable evidence of having been charred, and was held together by grass roots and fibers that surrounded it. The witnesses who were present when this part of the stake was taken up state that the place where it was found had probably never been disturbed since it was set. We think the testimony shows that the wood so found is a part of the quarter post originally set by the deputy United States surveyor to mark the subdivision of the sections; that he did not run the random line to the northeast corner, as stated in the field notes, but only to the mound where he set the stake, and, having done so, returned to the northwest corner of the section. A controlling circumstance that induces the conclusion we have reached is the building of the fence by Derrick. His claim was upon government land, to which he sought a title, and it is reasonable to suppose that he would desire to inclose the entire tract claimed by him. That he began his fence at the mound, which at that time was plain to be seen, and in which he thinks he saw the stake standing, affords very strong evidence that his fence began at the quarter post on the south side of section 28 and on the north side of section 33, in said township and range. The testimony shows that the north end of the fence built by the defendant extends upon plaintiff's premises 3.75 chains, but, as the prayer of the complaint is that the line be established to a point 2.85 chains west of where the north end of the fence stands, the defendant has no cause to complain because plaintiff failed to ask that the line at this point should be carried ninety links further west.

4. The line, as actually run upon the ground in making the

original survey, controls, to which the distance given in the field notes must necessarily yield (*Goodman* v. *Myrick,* 5 Or. 65; *Van Dusen* v. *Shively,* 22 Or. 64, 29 Pac. 76), and, believing, as we do, that the preponderance of the testimony supports the decree of the lower court, it follows that it must be affirmed, and it is so ordered.                    AFFIRMED.

Decided 7 October, 1901.