Argued February 9, affirmed February 23, 1915.

## McDOWELL v. CAROTHERS.

(146 Pac. 800.)

**Boundaries—Determination—Jurisdiction of Equity—Title to Land.**

1. A court of equity has jurisdiction of a suit to determine a disputed boundary, under Sections 518, 519, L. O. L., though the title to the land between the controverted lines is incidentally determined thereby.

   [As to the general rule for the location of boundaries, see note in 129 Am. St. Rep. 990.]

**Equity—Jurisdiction—Waiver of Objection.**

2. Where defendant, in a suit in equity, under L. O. L., Sections 518, 519, to determine a disputed boundary, conformed his pleadings to the requirements of those sections and asked that the boundaries be established, as set forth in his answer, he is precluded from objecting to the jurisdiction of equity to determine the disputed lines.

**Boundaries—Determination—Equitable Suit—Issues.**

3. In an equitable suit, under Sections 518, 519, L. O. L., to determine upon the location of boundary lines, the pleadings are general and permit investigation of any questions pertinent to the location of the lines cognizable in a court of equity.

Boundaries—Deeds—Determination—Evidence—Admissibility.

4. Boundaries may be proved by every kind of evidence admissible to establish any controverted fact, and a description may be rejected when it is manifest from all the circumstances that it was inadvertently inserted.

Boundaries—Description—Course.

5. Where the owner of a tract of land, the north line of which ran north 68° 30' west, by warranty deed conveyed a tract commencing at a certain point on the northerly line, running thence west 40° north, thence south 40° west, etc., around a square to the point of beginning, each corner being fixed by a monument which had disappeared before the controversy arose, the tract to contain 40 acres, and the tract, though unfenced, was treated by the parties and their successors in title as being bounded on the north by the northerly line of the grantor's claim, the courses given for the various lines will be controlled by the presumption that the grantor intended to convey only his own land, and by the quantity of land called for in the deed.

Boundaries—Description—Relative Importance—Monuments.

6. The actual location of lines and monuments on the ground controls over courses and distances.

From Marion: William Galloway, Judge.

Department 2.   Statement by Mr. Justice Bean.

This is a suit by H. C. McDowell against B. L. Carothers to determine a dispute concerning the location of the boundary lines between the land of plaintiff and the adjacent property of the defendant. The court rendered a decree as prayed for by the plaintiff. From this the defendant appeals.

The plaintiff's land, as alleged in his complaint, is described as follows:

"Beginning at a point on the south line of the donation land claim of James Pritchett and wife, 20.70 chains north 68° 30' west from the southeast corner of said claim in township 9 south, 3 west of Willamette meridian, Marion County, Oregon; thence north 68° 30' west 20 chains along the south line of the James Pritchett claim; thence south 21° 30' west 20 chains; thence south 68° 30' east, 20 chains, parallel to the south line of the James Pritchett claim; thence north 21° 30' east, 20 chains to the place of beginning, and

containing 40 acres of land more or less, and being a part of the D. L. C., of Benjamin Zink in Marion County, Oregon.''

It is alleged in the complaint that the defendant is the owner of land adjacent to that of plaintiff on the east, west and south thereof, and that there is a controversy and dispute between them as to the boundary and dividing lines between their lands. The answer of the defendant admits that the plaintiff and the defendant are the owners of adjacent land in the township mentioned, and that there is a controversy concerning their boundary lines. It denies the other allegations of the complaint, and for a further and separate answer alleges that the true and correct boundary line between the premises of plaintiff and those of defendant in the township named is as follows:

''Commencing at a point on the line between the donation land claims of James Pritchett and Benjamin Zink, in said township and range, which said beginning

point is 3 chains west of the west bank of a slough or lake, and at which beginning point, there stood on January 11, 1860, a maple tree 16 inches in diameter; thence south 40° west 20 chains to a point where on January 11, 1860, there was situated a dry ash stub 3 feet in diameter; then north 50° west 20 chains to a point where on January 11, 1860, there stood a maple tree 30 inches in diameter; thence north 40° east to the north line of the donation land claim of said Benjamin Zink.''

Defendant prays for a decree establishing the boundary lines as set forth in his answer.    AFFIRMED.

For appellant there was a brief over the names of *Mr. Carey F. Martin* and *Mr. Ivan G. Martin,* with an oral argument by *Mr. Carey F. Martin.*

For respondent there was a brief and an oral argument by *Mr. John Bayne.*

Mr. Justice Bean delivered the opinion of the court.

1. It is contended by counsel for defendant that the real issue in this case is to determine the title to the land between the disputed lines, and that a court of equity has no jurisdiction to try the case. Section 518, L. O. L., authorizes a suit to be maintained to determine a controversy between two or more owners of adjacent lands concerning the boundary lines thereof. Section 519 provides that the complaint in such suit shall be sufficient, if it appears therefrom that the plaintiff and defendant are the owners of adjacent lands, part of which is in the county, and that there is a controversy or dispute between them concerning their dividing line. It shall not be necessary to set forth the nature of such dispute or controversy further

than that the plaintiff shall describe the boundary or dividing line as he claims it. In his answer the defendant shall set forth the nature of his claim with reference to the location of the line in dispute.

The real controversy pertains to the location of the boundary lines between the parties' tracts and the question of title to the land between the controverted lines is only incidental. It has long been the special province of a court of equity to ascertain and fix lost or confused boundaries of lands. The case at bar comes squarely within the ruling in *School Dist.* v. *Price,* 23 Or. 294 (31 Pac. 657).

2. Both of the parties have conformed their pleadings to the section of the code mentioned. The defendant has prayed for affirmative relief asking that the boundary be established as set forth in his answer. He is therefore precluded from urging any objection to the jurisdiction of a court of equity to determine the disputed lines: *Kitcherside* v. *Myers,* 10 Or. 21; *O'Hara* v. *Parker,* 27 Or. 156 (39 Pac. 1004); *Killgore* v. *Carmichael,* 42 Or. 618, 620 (72 Pac. 637).

3. It therefore becomes necessary to consider the case upon its merits. It should be noted that in such a suit the pleadings are general and permit investigation of many questions pertinent to the true location of the lines which are cognizable in a court of equity; the rules varying from those governing in a law action.

4. In 5 Cyc., page 867, it is stated:

"The general rules of construction, as applied to deeds and grants, are applicable in the case of boundaries. Intention, whether express or shown by surrounding circumstances, is all controlling; and, that which is most certain and definite will prevail over the less certain and indefinite. * * *"

Boundaries may be proved by every kind of evidence admissible to establish any other controverted fact: 5 Cyc. 956; *Raymond* v. *Coffey,* 5 Or. 132. A boundary may be rejected when it is manifest, from all the circumstances of the case, that it was inadvertently inserted, and that a tract of land with definite boundaries, was bargained for and intended to be conveyed: *Thatcher* v. *Howland,* 2 Met. (Mass.) 41; 5 Cyc. 868, note. In the case last mentioned, by strictly following the special description given in the deed, it would have reduced the area of land conveyed from 30 acres, the number mentioned therein, to 15: See, also, *Albert* v. *Salem,* 39 Or. 466 (65 Pac. 1068, 66 Pac. 233); *Mizell* v. *Simmons,* 79 N. C. 182; *Johnson* v. *Bowlware,* 149 Mo. 451 (51 S. W. 109); *Warden* v. *Harris* (Tex. Civ. App.), 47 S. W. 834.

"If a survey is subsequently made which changes the location of a larger tract, within which, according to the language of the deed, the land conveyed was located, or if the subsequent survey restricts the area of such tract, the title of the grantee is not divested, nor his rights impaired": 3 Devlin on Real Estate, § 1032; *Widbur* v. *Washburn,* 47 Cal. 67.

5. The following appears from the record: On January 11, 1860, one Nelson R. Doty owned land in township 9 south, range 3 west of Willamette meridian, near the point where the Santiam River flows into the Willamette. The land was wild and unimproved, and of but little value at that time, being in a brush and forest region. This section of country had been taken up by James Pritchett and his neighbor, one Benjamin Zink. The south line of the Pritchett and the north line of the Benjamin Zink claims ran southeasterly and northwesterly; the bearing between the two claims for a considerable distance being north 68° 30′ west.

Between the westerly extensions of the Pritchett and Zink claims there remained a tract of government land somewhat V-shaped, described as lot 4, section 30. This small area, a part of which is included within the boundaries of plaintiff's land, does not appear to have been taken into consideration in making the early surveys or conveyances, and hereafter will be noticed only in a general way. Jesse C. Looney, a pioneer in that neighborhood, desired a tract of land from which he might secure wood and fuel. On January 11, 1860, he purchased such a piece from Nelson R. Doty, describing the same in the conveyance of that date as follows:

"Commencing at a maple tree 16 inches in diameter, 3 chains west of the west bank of a slough or lake on a line between the claims of James Pritchett and Benjamin Zink and running thence west 40° north 20 chains to a maple tree 12 inches in diameter, having three forks; then south 40° west 20 chains to a maple tree 30 inches in diameter; thence east 40° south 20 chains to a dry ash stub 3 feet in diameter; thence north 40° east 20 chains to the place of beginning, and containing 40 acres, situated in township 9 south, range 3 west, of the Willamette meridian in Marion County, Oregon."

The beginning point of the survey of the Looney tract on the line between the Pritchett and Zink claims, as claimed by each of the parties, is practically identical. After the death of J. C. Looney, the land was owned by certain of his heirs, who retained the tract for some time for its original purpose, but never fenced it. Both parties agree that on January 11, 1860, Nelson R. Doty owned the whole of the donation land claim of Benjamin Zink, but no other land in that section. The heirs of Jesse Looney had the premises

surveyed by B. B. Herrick, county surveyor.  On December 28, 1912, they conveyed the same to the plaintiff by description furnished by the surveyor, the same as alleged in the plaintiff's complaint.  At the time of this conveyance to McDowell, all the monuments mentioned in the Doty deed to Looney, except that at the initial point, were obliterated.  Through mesne · conveyances from Nelson R. Doty on March 5, 1909, W. T. Freeman and B. L. Carothers, defendant, acquired all the Zink D. L. C., except 34 acres deeded to one Myers and the 40 acres deeded to Jesse Looney. The description in the deed from Robert L. Hornbuckle to Freeman and defendant excepts therefrom the 34 acres deeded to B. F. Myers on February 2, 1877, and also the 40 acres deeded to Looney on January 11, 1860, recorded in Book 13, page 6, records of deeds for Marion County, Oregon, leaving 93 acres, more or less.  The same description is contained in all the mesne conveyances from Nelson R. Doty to the defendant.  About the year 1911, Freeman and Carothers, desiring to partition their land in the Zink D. L. C., employed C. H. Leonard of Albany to survey the same, and, doing so, he surveyed the east, south and west lines of the Looney tract the same as they are located by the plaintiff.  After taking out the Myers tract of 34 acres, the Looney tract of 40 acres, as claimed by plaintiff, Freeman and Carothers divided the balance of the Zink D. L. C., which consisted of nearly 91 acres. In making this division, Freeman and wife executed to the defendant a deed containing the same exception of the Looney tract as in the Hornbuckle deed to Freeman and Carothers.  About a year or two after Freeman and Carothers divided their land, plaintiff McDowell went to look at the Looney tract before buying it, and Freeman showed him the lines and corners thereof ac-

cording to the survey made by Leonard and as claimed by the plaintiff. After McDowell bought this tract the defendant constructed a wire fence, upon the lines as claimed by him, on the east and south of the plaintiff's land. A dispute immediately arose between them. When Freeman and defendant bought the land in the Zink claim, the estimated area was about 93 acres. It is shown by the evidence that the river near the west of the Looney tract has washed away a portion of the land of Freeman and Carothers.

The first question to be solved is the line on the north of the Looney tract, the initial point at the northeast corner of which is defined and unquestioned. If this line were run west 40° north 20 chains, it would embrace land in the Pritchett claim which no one interested in this land at any time has ever claimed to be a part of the tract. If, on the other hand, it is intended to describe this north line as coinciding with the south line of the Pritchett claim and the north line of the Zink claim, it is plain that the east and west lines of the tract being at right angles with the north line, and the distance of each being given, would make the amount of land called for in the conveyance made in 1860.

Until recent years but little use has been made of this land. It is in evidence by D. H. Looney that about 40 years ago some of the timber surrounding the Looney tract was cut by Nelson R. Doty to the line as now claimed by the plaintiff. Afterward the heirs of Looney sold the timber from the tract in dispute to Doty, who instructed one Smith to cut the same to the line claimed by the plaintiff. Except for this timber transaction, but little use has been made of the land for many years. It appears that, according to the lines claimed by the plaintiff, there are three or

four acres of land slashed and seeded for pasture and a small garden cleared for the plow in the southeast corner of the tract.

6. It is a well-settled rule of law in this state that the actual location of lines and monuments on the ground will control over courses and distances, and, if the former can be ascertained, the latter must give way. Where it is claimed that lines and monuments do not agree with courses and distances, the evidence of their actual location must be so clear and satisfactory as to establish that fact to the entire satisfaction of the court or jury: *King* v. *Brigham,* 19 Or. 560, 566 (25 Pac. 150), and cases there cited.

In the case under consideration it appears from the deed of January 11, 1860, from Nelson R. Doty to Jesse Looney, that the grantor intended to convey 40 acres of his woodland to the grantee. It is not to be presumed that Doty intended to commit a trespass and fraud by attempting to convey the land of Pritchett on the north or to warrant the title to the real estate of another. Nelson R. Doty and Jesse Looney are both dead. N. H. Doty and D. H. Looney, their respective sons, now middle-aged men, both testified to facts tending to show that the Zink-Pritchett line has been recognized as the north line of the Looney tract for about 40 years, as declared by Nelson R. Doty during his lifetime. It is shown that a fence was built on or near this line by the occupants on the two sides. To first locate the major tract of Doty, from which the smaller tract was conveyed, we find, as the north boundary thereof, the north line of the Zink D. L. C., a well-established and easily ascertainable line which coincides with the south line of the Pritchett D. L. C. There is no question in regard to this line. All concede it to be correct. The initial

point of the boundary line of the Looney tract at the northeast corner thereof is described in the Doty deed as on the Zink-Pritchett line a certain distance west of the bank of a slough or lake. The monuments defined in the Doty deed as being at the other three corners of the Looney tract have all been effaced by time. Hence, the next best evidence of the boundary is the Zink-Pritchett line, which for all practical purposes is a monument or actual location of the north line of the Looney tract on the ground, and is called for in a general way in the Doty deed, and the courses given in that deed must yield thereto. The case of *King* v. *Brigham,* 19 Or. 560, 566 (25 Pac. 150), is identical in principle with the one at bar: See *Moore* v. *Stewart* (Tex.), 7 S. W. 771; *Reed* v. *Tacoma,* 2 Wash. 198 (26 Pac. 252, 26 Am. St. Rep. 851); *Tucker* v. *Satterthwaite,* 123 N. C. 511 (31 S. E. 722).

Where the boundary lines of lands have become confused and are in controversy, it is an almost universal custom to resort for a solution to the lines and monuments of adjoining tracts that are defined. To follow the courses named in the Doty deed would conflict with other parts of the deed in two particulars: (1) It would locate a considerable portion of the tract upon the Pritchett claim; and (2) the number of acres definitely called for in the deed would be materially lessened—neither of which results seem to have been intended at the time by the parties to the deed. Apparently neither of the parties interested in that conveyance were civil engineers, and they or the scrivener described the courses to be inserted in that instrument. The north line of the land in question being established, the east and west lines are practically conceded to be at right angles therewith and should be so laid. The distances of the lines of the 40-acre square,

as called for in the deed, fix the location of the south line. To avoid complication, that part of lot 4 of section 30 embraced within the ascertained lines of the plaintiff's land should be excepted therefrom. We find in 4 R. C. L., Section 43, page 107, the following stated:

"The rule that a marked line controls a call in a deed for course and distance is not applicable, however, unless the line is so connected with the deed, either by intrinsic or extrinsic evidence, that there is created a presumption that the grantor intended to adopt it."

The plaintiff is entitled to a decree as prayed for in his complaint, with the exception above noted as to lot 4.

The decree of the lower court is affirmed; plaintiff to recover costs.                              AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BENSON and MR. JUSTICE HARRIS concur.