### MUCK et ux. v. WEYERHAEUSER TIMBER CO.

(Circuit Court of Appeals, Ninth Circuit.    June 6, 1921.)

No. 3620.

1. **Public lands ☞106(1)—Finding by Land Office as to location of boundary of patented tract is conclusive in suit to establish boundary.**

   The findings of the tribunals of the Land Office that the boundary of two patented donation claims was intended to be the river bank, and not a surveyed line a short distance therefrom, made in proceedings to enter as a homestead a strip of land between the donation claim and the river, are findings on questions of fact involving the interpretation of the survey notes, and are conclusive in a subsequent suit by the owner of the donation claims against the applicant for homestead to settle the disputed boundary between the lands.

2. **Boundaries ☞26—Objection that there was an adequate remedy at law held not to prevent suit in equity under statute to establish boundary.**

   The objection that there was a plain, speedy, and adequate remedy at law by ejectment does not prevent a suit in equity under Or. L. §§ 518–522, to determine disputed boundary lines between an owner of patented lands and the holder of an adjoining possessory claim, where there were allegations supported by evidence that defendant or his agents fraudulently attempted to destroy original witness trees and to efface original markings, and did mark other trees to make them appear to be the original trees.

3. **Courts ☞335(1)—State rule that request for affirmative equitable relief waives objection to equitable jurisdiction adopted by federal court.**

   Though the United States courts of equity could not grant equitable relief, if the case were one purely cognizable at law, they can, where the subject-matter of the suit is one belonging to a class where equity has jurisdiction, conform to the state rule that, if defendants by answer pray for affirmative equitable relief, they waive any objection to the jurisdiction of equity.

Appeal from the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Suit by the Weyerhaeuser Timber Company against Alwin A. Muck and wife, to settle a dispute over a boundary line. Decree for plaintiff, and defendants appeal. Affirmed.

Arthur I. Moulton, of Portland, Or., for appellants.

Carey & Kerr, C. A. Hart, and P. P. Dabney, all of Portland, Or., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. The Timber Company sued Muck and wife to settle a confused and disputed boundary line of a strip of land along the Willamette river, Oregon. Muck has had possession for several years, and claims under right to enter the land as a homestead, while the Timber Company contends that its lands extend to the river. From a decree in favor of the Timber Company, Muck appealed.

The Timber Company owns a tract which was a part of two donation land claims appropriated in 1855 by James Loomis and James John, respectively, and patented in 1866. Muck's contention is that the surveyed westerly boundary of the donation claims running along the river did not coincide with the meander line of the river, and that there is a strip of vacant land subject to homestead entry. The land office rejected Muck's application, on the ground that the records of the land office did not show a lotting of the tract applied for, and that the field notes and record of surveys of the donation claim showed no vacant land between the west line of the claims and the Willamette river, and because, according to the field notes of the survey of the claims, the right bank of the Willamette river is the boundary thereof from the northwest corner of the Loomis to the southeast corner of the Johns claim, "and it is so shown on the plat of the township approved September 25, 1862." On appeal from the decision of the Commissioner, the Secretary of the Interior affirmed the ruling of the Commissioner, saying:

"The plat of survey of the donation land claims was filed in 1862. Prior to that time James Loomis had filed his application for 640 acres of land, which application described the lines by courses and distances, starting from a point on the bank of the Willamette river and running to the same point after following out certain boundary along the meanders of the river bank of the Willamette river to the place of beginning. The John claim commenced at a similar point, and running to the Willamette river, thence southeasterly along the said river to the place of beginning."

The Secretary held that the application showed that it was the intention of the donation land claims to appropriate the land up to the banks of the Willamette river; that, in surveying out the claims, courses and distances were followed, but according to the records of the General Land Office the courses and distances correspond with the meander line of the Willamette river; that the survey had been in existence for nearly 50 years, and—

"although instructions were subsequently issued to the Surveyor General to survey out any other vacant public land into lots that were made fractional

In this township, the alleged vacant government land in this township, the alleged vacant government land applied for by Muck was never returned as government land, nor has it ever been platted in a tract or lot."

The Secretary cited Railroad Co. v. Schurmeir, 74 U. S. (7 Wall.) 272, 19 L. Ed. 74, in support of the view that the water course, not the meander line as actually run on the land, is the boundary. On motion for rehearing the Secretary re-examined the field notes, and after quoting from them abided by his former decision that the river was the boundary line of the donation claims. Subsequent attempt to open the question with the Land Department by application for a survey of the alleged vacant tract was unsuccessful. Rehearing was applied for and former decisions were reaffirmed. Then a "petition for the exercise of supervisory authority" was filed with the Department of the Interior, and again the former rulings were affirmed.

Appellant now insists that the records disclose that the Land Department officials have misconstrued the language of the patents and of the field notes of the surveys upon which the patents are based, and that they have erroneously treated the original donation land notifications of Loomis and John as muniments of title. It is also argued that the decisions of the land officials were not competent evidence, and that the officials were without jurisdiction to grant away any estate that the United States may have had in the lands not included within the patents.

[1] But in our opinion the records referred to show that the ultimate question which the Interior Department examined and necessarily considered in order to act upon the applications and claims of Muck was whether the boundary lines, particularly the western line, of the donation claims was the meander of the Willamette river. We might quote at length from the several rulings to show that the Land Department officials made detailed examination of the field notes, the dates of the respective surveys, the exact position of certain monuments, what line had been adopted by the surveyor who marked the boundaries of the Loomis donation claim, and whether the line used by the surveyors was to be a meander line or a line bounding the claim on the west, so as to leave a strip of ground between the tract surveyed and the Willamette river. The variations in the lines of the survey and in the plats were considered together with the exact field notes of the survey of the Loomis claim as to courses and distances next to and along the river. "It is obvious," said the Secretary in discussing the motion for rehearing, "that the surveyor intended these as meander lines of the stream, and they have been and are accepted as such by the Land Department. They do not so depart from the meander line of the township survey as to constitute fraud or such material mistake as will warrant a finding that there remains a tract of public land as alleged by the applicant. The river, not the meander line, is the boundary of the donation claim, and the motion for rehearing is accordingly denied."

The interpretation of the survey notes became a question of fact, and the effect of the decisions of the Interior Department is conclusive in this proceeding. Gardner v. Bonestell, 180 U. S. 362, 21 Sup.

Ct. 399, 45 L. Ed. 574, is quite like the present case. There a dispute arose whether a particular strip was within or without the limits of a grant. After survey which excluded the tract, application was made to enter it as public lands. A contest arose between the applicant and those who claimed under the grant, and after successive appeals within the Interior Department the right to enter was sustained and patent issued. Litigation followed, and it was found that one of the questions decided by the land officials of the United States in a contest mentioned in the cross-complaint "was a question of fact, namely, the location of the western boundary of the grant made by Gov. Figueroa to Juan Reed." The Supreme Court sustained the ruling that the decision of the Land Department, having been founded upon disputed questions of fact, was not subject to review in the court; Justice Brewer saying that it was well settled in Knight v. United Land Ass'n, 142 U. S. 161, 12 Sup. Ct. 258, 35 L. Ed. 974, that the power to make and correct surveys of the public lands belongs exclusively to the political department of the government, and that the action of that department within the scope of its authority is unassailable in the courts, except by a direct proceeding.

It was also insisted in that case that the last survey was a mere compilation, and not an actual resurvey, and that it included a large body of lands on the one side, which were not in fact within the boundaries of the tract of which judicial possession had been given, and excluded, on the other side, a large body which was within such boundaries, and which included the lands in controversy. But the court held that the Land Department, in a case within its jurisdiction of questions of fact, having found and adjudged that the land in litigation was outside the exterior boundaries of the grant, the finding was a matter of fact and based on testimony, and that such determination concluded the courts. St. Clair County v. Lovingston, 23 Wall. 46, 23 L. Ed. 59.

[2] Appellants challenge the jurisdiction of the court upon the ground that there was a plain, speedy, and adequate remedy at law by ejectment, and that the Oregon state statutes (sections 518–522, Oregon Laws) are not applicable. The state statutes provide that, in any case where there exists a dispute between two or more owners of adjacent or contiguous lands concerning the boundary lines thereof, either party may bring suit in equity for having the dividing line ascertained and established. Section 519 pertains to the complaint, which must show that plaintiffs and defendants are "owners" of adjacent lands, and that there is a controversy between the parties concerning their boundary lines. Section 520 pertains to the mode of proceeding.

Inasmuch as appellants claim only by a possessory right, it is not entirely clear that Muck is an "owner" of the tract in his possession and that the statutory remedy is available to the Timber Company. On the other hand, Muck claimed a right to acquire ownership, and the contest is one to settle a boundary line, and not one to try title. Besides this, there is an allegation in the complaint, and some testimony tending to support the allegation, that defendant or his agents wrongfully and fraudulently attempted to destroy certain original witness trees and to efface original markings, and did mark other trees so as

to make them appear to be the original witness trees. These allegations were sufficient, we think, to require the exercise of jurisdiction, and the court properly overruled the motion to dismiss based on the ground that there was a plain remedy at law. King v. Brigham, 23 Or. 262, 274, 31 Pac. 601, 18 L. R. A. 361. The case is in a general sense appropriate to equity. United States v. Texas, 143 U. S. 621, 647, 12 Sup. Ct. 488, 36 L. Ed. 285; McDowell v. Carothers, 75 Or. 126, 146 Pac. 800; Sprigg v. Hooper (La.) 9 Rob. 248.

[3] Furthermore, after motion to dismiss was denied, defendants by answer set up an affirmative defense of their claim as to the true boundary line, and prayed that the cause be dismissed, or, if dismissal were denied, that the court proceed to adjudge the westerly boundary line as specifically described in the answer. The rule of the Oregon decisions is that in boundary cases, where the answer prays for affirmative relief by way of asking that the line described in the answer be adopted, the defendant waives any objection that he might have urged against the right of a court of equity to establish the controverted boundary. Killgore v. Carmichael, 42 Or. 618, 72 Pac. 637; McDowell v. Carothers, 75 Or. 126, 146 Pac. 800. If the case were one purely cognizable at law, one where it would not be competent for the court to grant the relief sought, then the court would of its own motion prevent the matter from being drawn into equity. But regarding the subject-matter as belonging to a class where equity has jurisdiction, we believe that the federal court could conform to the rule of the Oregon cases, and that defendant by seeking affirmative equitable relief waived objection to the jurisdiction. Brown v. L. S. Iron Co., 134 U. S. 530, 10 Sup. Ct. 604, 33 L. Ed. 1021; McGowan v. Parish, 237 U. S. 285, 35 Sup. Ct. 543, 59 L. Ed. 955.

We find no error, and affirm the decree.

Affirmed.