Submitted on briefs November 21, reversed December 11, 1917.

## McKINNEY v. HINDMAN.*

(169 Pac. 93.)

**Adverse Possession—Color of Title—Grants from State—Boundaries.**

1. A deed of land from the state constitutes color of title which relieves proving boundaries of tenancy, and is sufficient basis for title by adverse possession.

[As to what amounts to color of title sufficient to sustain adverse possession, see notes in 14 Am. Dec. 580; 88 Am. St. Rep. 701.]

**Adverse Possession—Waiver of Claim to Land—Sufficiency of Evidence.**

2. Evidence *held* insufficient to support a finding that defendant in an action to quiet title to land had waived his right to claim title by adverse possession.

**Estoppel—Sufficiency of Proof.**

3. Conduct amounting to estoppel should be clearly established by a preponderance of the evidence, and, where testimony of witnesses of equal credibility is in direct conflict, there is no preponderance.

**Frauds, Statute of—Title to Land—Waiver of Claim.**

4. A purchaser of land with knowledge that another claims title in fee by adverse possession cannot set up estoppel as against such claimant on a subsequent verbal statement that he waived his claim, since such purchaser was charged with a knowledge of the law that ordinarily the title to real property cannot be acquired except by deed and that a contract for the sale of land is void unless the same or some note or memorandum thereof expressing the consideration be in writing and subscribed by the party to be charged.

From Crook: T. E. J. Duffy, Judge.

In Banc.    Statement by Mr. Justice Burnett.

This is a suit to quiet title to the northwest quarter of the southwest quarter of section 3, township 15 south, range 10 east, Willamette Meridian, in Crook County, of which the plaintiff alleges himself to be the owner and in possession. The complaint is traversed by the answer of Charles J. Hindman and Martha Hindman, his wife. For an affirmative defense they allege the following:

*For authorities discussing the question of necessity of color of title when not expressly made a condition by statute to found title by adverse possession, see notes in 15 L. R. A. (N. S.) 1178; 27 L. R. A. (N. S.) 340.                                                   Reporter.

86 Or.—35

"That the defendant, Charles J. Hindman, is the owner in fee simple to the premises described, in plaintiff's complaint; that he and his predecessors in interest herein during the period of more than 30 years last past, and openly, notoriously, peaceably, adversely, uninterruptedly, exclusively and continuously, under a claim of right thereto, and under a deed from the State of Oregon, with notice and knowledge to all, and everybody, and adversely to all the world, been in possession of the said premises; that this defendant, Charles J. Hindman, has, in good faith, improved the said premises by fencing, clearing and cultivating said premises; that he has secured a valuable water right sufficient to irrigate 23½ acres of said premises, which water right as confirmed by the board of control dates from 1871."

This quoted new matter of the answer is denied by the reply which further avers:

"That the defendants ought not to be permitted to deny the title of the plaintiff to the real property described in plaintiff's complaint herein nor ought the defendants to be permitted to assert any right, title or interest to said premises in themselves to said premises; nor ought the defendants to be permitted to assert or claim title to said premises by adverse possession; for the reasons that the defendants have admitted to plaintiff since he came into the possession of said premises and prior thereto that they, the defendants, had no title or claim to said premises and that the plaintiff and his predecessors in title and interest, were the owners thereof, and the defendants have asserted no title to said premises and recognized the plaintiff as the true owner thereof, and by their acts have led this plaintiff to believe that they had no right, interest or title to said premises and intended to claim none thereto, in reliance upon which acts and representations of said defendants and with the knowledge of said defendants, this plaintiff procured title to said premises from the true owners for a valuable consideration and at an expenditure of a large sum of money, and has placed valuable improvements thereon, and acquired title to 80 acres of lands adjoining said prem-

ises, the value of which depends upon plaintiff's title to the premises mentioned herein, and plaintiff has sowed valuable crops thereon and otherwise altered his position in reliance upon the representations and acts of said defendants, and he would be irreparably and irrevocably injured and damaged should he be deprived of the premises described in the complaint herein."

The testimony was taken before a referee, upon consideration of which the Circuit Court made findings of fact, reached a conclusion of law that the defendants were estopped from asserting any title in the realty mentioned, and entered a decree in favor of the plaintiff quieting his title. The answering defendants appeal.                    REVERSED. DECREE RENDERED.

For appellant there was a brief submitted by *Mr. W. B. Daggett.*

For respondent there was a brief over the name of *Mr. Lake M. Betchell.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The parties agreed before the referee that the plaintiff's paper title was deraigned from a United States patent covering the land in dispute issued to the Willamette Valley and Cascade Mountain Wagon Road Company under date of February 10, 1894, and recorded in the county records November 26, 1895, his immediate grantor being the Oregon and Western Colonization Company by deed of July 28, 1915, recorded August 9th of that year. It was also stipulated that the defendant, Samuel M. W. Hindman, received a deed from the State of Oregon covering the land, dated October 30, 1884, and recorded on Novem-

ber 20th of the same year, and that thereafter Charles
J. Hindman obtained a sheriff's deed for the premises
on execution against Samuel, dated February 5, 1902,
and recorded March 17th of the same year. It ap-
pears in evidence practically without dispute that
Samuel M. W. Hindman, the father of the defendant,
entered upon the land in question in the late autumn
of 1870; that it was a tract selected as swamp-land by
the state authorities and that he purchased the same
from the State of Oregon, taking the deed of October
30, 1884, as stated; that he remained in possession of
the realty cultivating and draining it, and occupied it
as his own until succeeded by his son under the sher-
iff's deed already noted, and the latter in turn con-
tinued in occupancy until 1912. On April 5th of that
year the Oregon and Western Colonization Company
having come into the title of the Willamette Valley
and Cascade Mountain Wagon Road Company, con-
tracted to sell the whole southwest quarter of section 3
to Berta Schonleber. On February 15, 1913, the plain-
tiff purchased the estate of Mrs. Schonleber under her
contract and entered into possession of the land assum-
ing the obligations of her covenant. It is clear that
the deed from the State of Oregon to the answering
defendants' predecessor in interest constituted color
of title. In that respect the instrument is valuable
only as showing the extent of the holding of the Hind-
mans and to relieve them from the necessity of strictly
proving the boundaries of their actual tenancy. In
other words, by the color of title they are excused from
establishing exact *possessio pedis*. It has been de-
cided many times in this state that where one holds
the exclusive possession of land under color of title,
claiming adversely against the whole world to be the
owner thereof for ten years continuously, he becomes

vested with the fee-simple title: *Caufield* v. *Clark,* 17
Or. 473 (21 Pac. 443, 11 Am. St. Rep. 845); *Dunnigan*
v. *Wood,* 58 Or. 119 (112 Pac. 531); *Stout* v. *Michel-
book,* 58 Or. 372 (114 Pac. 929); *Parker* v. *Wolf,* 69
Or. 446 (138 Pac. 463). The evidence clearly estab-
lishes that the Hindmans come within the reason of
this rule and that if nothing else were shown they be-
came the owners of it on account of having held
possession of the land for so long a period. The plain-
tiff's predecessors in estate could have begun eject-
ment against the Hindmans at least upon the issuance
of the patent on February 10, 1894, but no steps were
taken against them until this suit to quiet title. They
consequently became vested with the fee-simple title
as stated by the precedents noted.

2. It is contended, however, that the defendants are
estopped to claim any title on account of their conduct.
It becomes necessary therefore to rehearse some of the
testimony. The plaintiff as a witness in his own be-
half declares that he became acquainted with the land
in 1906 when he was visiting in that country, and that
Mr. Hindman had showed it to him and stated that he
himself owned the property. The plaintiff says he
bought the land of the Schonlebers February 15, 1913,
and took possession immediately. He states that they
had never cultivated it to his knowledge; that when
he bought he understood Hindman had a claim against
the property; that he interviewed him later in the
spring, and that the latter seemed to think the com-
pany should have given him the preference in acquir-
ing its title. He was then asked this question by his
counsel:

"State generally, what your relations were with
Mr. Charles J. Hindman and Martha Hindman, S. M.
W. Hindman, relative to this land, and your occupancy

of the same, and the improvements thereon, anything in connection with that.''

· He answered: ''Well, in connection with this talk, at the time Mr. Hindman told me he had a deed from the state leading back several years for that land under Swamp Act, I believe, and of course in the conversation I simply remarked to him then, 'Well, there is no occasion for us to have any trouble in connection with this matter. We will be friends and if you consider you have claim there, I would ask you, as a favor, to bring it to an issue at once, or as soon as you can.' Mr. Hindman simply stated that he would see his attorney in relation to the matter and would later advise me as to what he would do. And after we talked a week or ten days, he drove up to the store and called me out of my place of business and simply stated, he says, 'Mack, I have decided to drop that matter,' and he says, 'You can go ahead.'

''Q. Did he say he had no title to the land?

''A. No, sir, he didn't say that directly, he thought that possibly he might beat the case but went on to state it would be a long drawn out and expensive proposition and didn't feel justified in doing it.''

On cross-examination, in speaking of his purchase from Mrs. Schonleber, he testified as follows:

''Q. Did she tell you anybody else claimed the premises?

''A. No, she didn't.

''Q. Did you ask her about Hindman when she offered to sell to you, didn't you inquire if Hindman owned these premises?

''A. No, sir.

''Q. Yet, Mr. Hindman told you six years before that he owned the land?

''A. Yes, I knew he claimed the premises.''

On cross-examination the defendant Hindman as a witness in his own behalf, testified thus:

"Q. Isn't it a fact you came to Mr. McKinney since he has been there and told him you were not going ahead to claim any title to this land?

"A. No, sir, I didn't.

"Q. You do not remember of any such conversation?

"A. Not that effect. I told him several times if I could hold that land I was going to do it.

"Q. You knew he was going ahead and use this land?

"A. I knew he was plowing a ditch and put it in there I think two years.

"Q. You didn't claim title during that time?

"A. I told him whenever I got around to it and could find out what I could do in regard to it I would do so.

"Q. You never did anything?

"A. No, never was able to both financially and physically.

"Q. Did you not know that Mr. McKinney was depending on what you said and what you were doing to give him exclusive (title) of the land?

"A. No, he told me he was depending on the road company and they was going to defend that title to the finish."

3. McKinney for himself on the one hand and Hindman for himself on the other gave practically all the evidence on the question of estoppel. On this branch of the case the issue is whether the conduct of Hindman amounts to an estoppel and further whether estoppel is sufficiently proved. The two witnesses are strongly at variance with each other in their statements. Conduct amounting to an estoppel should be clearly established by a preponderance of the testimony. As to that we conclude that the plaintiff has not made any stronger case than the defendants. The former contends substantially that Charles J. Hindman waived his title to the land and permitted the plaintiff to go ahead with his improvement; while Hindman

maintains that owing to ill health and insufficient finances he was unable to take active measures but that he always informed the plaintiff of his purpose to hold the land if he could. Considering the two witnesses of equal credibility the plaintiff fails to make out a preponderance of the testimony.

4. Again, the question is about the title to the land. Out of the plaintiff's own mouth we learn that he knew of Hindman's claim and had known it for several years; that equipped with this knowledge and without consulting Hindman he acquired the title of Mrs. Schonleber and assumed her contract to buy the land, thus committing himself to the process of acquiring title without any inducement whatever from the defendants. It is clear that the plaintiff was not thus far influenced to act by anything that Hindman said or did. By the least inquiry he could have ascertained the extent of the latter's claim and would have discovered a state of facts conferring upon the defendant the fee-simple title to the land. He now relies upon what Hindman said to him after he had contracted to buy the land. In other words, he undertakes to divest the latter of title to realty by his verbal utterances. In *Dechenbach* v. *Rima*, 45 Or. 500 (77 Pac. 391, 78 Pac. 666), Mr. Justice BEAN says:

"Estoppel *in pais* arises from misrepresentation or concealment of a material fact, and rests on the ground that it would be a fraud in a party to assert what his previous conduct has denied when others have acted on the faith of that denial. Such an estoppel can rarely arise unless it has reference to a present or past state of things, or relates to an intended abandonment of an existing right; and it has no application to a mere breach of a promise or covenant relating to the future."

The plaintiff is charged with a knowledge of the law that ordinarily the title to real property cannot be acquired except by deed and that a contract for the sale of land is void unless the same or some note or memorandum thereof expressing the consideration be in writing and subscribed by the party to be charged. In the case last cited the contention of the defendant against an action of forcible entry and detainer was that he bought out a previous tenant on the assurance of the plaintiff (landlord) that the latter would make him a lease of the property for three years. The opinion goes on to say:

"The only contention is that in making such purchase he (defendant) relied on the verbal promise of the plaintiff that, if he would buy the business, the plaintiff would thereafter execute to him a lease of the premises for more than one year. This contract was void by the statute of frauds, and is therefore void for all purposes. It conferred no right upon the defendant and created no obligation on the part of the plaintiff."

The doctrine of that case is applicable to this. As respects the title to the land which is the only thing here in question, the plaintiff appears to have acted independently of anything stated by Hindman and to have embarked upon his enterprise and committed himself irrevocably to it before he consulted Hindman in any particular. Not having been influenced as to the acquisition of title by any conduct on the part of the holder of the title by prescription the latter is not estopped to assert the truth. All that seems to have been done by the plaintiff after his conversation with Hindman was to expend about $150, as he says,

"in connection with building and equipping a ditch and dam site on Squaw Creek for part of the land it covers and fencing and plowing, the cultivation and handling of that land, crops and so forth,"

How much of this, if any, was permanent improvement does not appear. Neither is it disclosed that he lost anything on account of it. His venture of irrigating and farming Hindman's land may have been profitable, but certainly cannot amount to an estoppel as against the latter. In short, the plaintiff has not made out by a preponderance of proof his contention about the statements upon which he relies. Further, whatever they may have been, they were made after the plaintiff had embarked upon the purchase of the land to which course the conduct of Hindman did not influence him. The decree of the Circuit Court, therefore, must be reversed and one here entered quieting the title of the property in the defendant Charles J. Hindman.          REVERSED.  DECREE RENDERED.

---

'Argued October 30, affirmed December 11, 1917.