Argued September 16, affirmed October 7, 1919.

## KRUEGER v. BROOKS.

(184 Pac. 285.)

**Adverse Possession—Evidence Showing Acquisition of Title by Adverse Possession.**

1. In suit to quiet title, a survey having disclosed that a fence dividing the lands of the respective parties was located north of what would be the dividing lines in strict conformity with the description in their deeds, evidence *held* to show that plaintiff owned up to the fence in fee simple by force of adverse possession.

**Pleading—Amendment of Misdescription in Complaint to Quiet Title Allowed.**

2. In suit to quiet title, controversy arising out of fact that survey disclosed a fence was located north of the line between the two tracts of the parties as shown by the description of their deeds, where plaintiff intended to litigate the strip in dispute, but by mistake misdescribed the tract, it was proper for the court to permit him to file an amended complaint; defendant not being surprised.

**Quieting Title—Equity has Jurisdiction of Suit by Party in Possession.**

3. Equity had jurisdiction of a suit to quiet title, brought by a party in possession of the land in dispute, since he could not prosecute an action in ejectment, and in the suit he had a right to have title adjudicated.

Appeal and Error—Refusal to Permit Filing of Amended Answer Harmless.

4. Where the answer which had been filed in suit to quiet title permitted defendant to offer all evidence which would have been admissible under any issues raised by a proposed amended answer, refusal to permit defendant to file such answer was harmless to defendant.

Adverse Possession—Amended Complaint Sufficient to Sustain Decree Based on Adverse Possession.

5. In suit to quiet title, amended complaint *held* to have alleged ownership or title by adverse possession and to support decree for plaintiff.

Adverse Possession—For Requisite Period Vests Title.

6. Adverse possession for the requisite period vests title in the possessor of a tract of land by operation of law.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Department 1.

This is a suit to quiet title. A trial resulted in a decree for the plaintiff W. C. Krueger. The defendant Carl O. Brooks appealed.

The litigants own and occupy adjoining tracts of land. The controversy arose out of the fact that when a survey was made it was discovered that a fence, which for considerably more than ten years had divided the lands as used and occupied by the litigants, was located between about 29 and 33 feet north of what would be the dividing line between the two tracts if a line were drawn upon the ground in strict conformity with the descriptions in their respective deeds.

Frederick Schleuter homesteaded and acquired title to the following described premises: The southeast quarter of the northwest quarter and the northeast quarter of the southwest quarter of Section 6 in township 1 north of range 1 west of the Willamette Meridian, containing eighty acres. For convenience the land just described will be referred to as Tract A. Afterwards Schleuter conveyed to Charles Krueger

and subsequently on September 15, 1909, the latter deeded to his son W. C. Krueger, the plaintiff.

Thomas Jeff Brooks homesteaded a tract of land of which the following described premises are a part: The south half of the northeast quarter of the northwest quarter of section 6, township 1 north, range 1 west, Willamette Meridian. For the sake of brevity the land included in this description will be designated Tract B. On August 27, 1915, Thomas Jeff Brooks deeded Tract B to his son Carl O. Brooks, the defendant.

In 1882, Charles Krueger moved on to Tract A with his family and resided there at least until the conveyance to the plaintiff. The uncontradicted evidence is that in 1882, there was a brush fence separating the premises occupied by Charles Krueger and the adjoining lands on the north; but the brush fence was subsequently destroyed by fire, and soon after the fire a new fence was built by Thomas Jeff Brooks and Charles Krueger, each building one half of the fence. This new fence was constructed practically along the line of the brush fence, although the new fence may have varied eight or ten feet one way or the other from the line of the old brush fence. The exact date of the construction of this new fence is uncertain, but it is accurate to say that it was built at some time between 1888 and 1893. While the new fence was repaired from time to time and, as we understand the record, was rebuilt a number of years ago, nevertheless a fence has been maintained without interruption along the identical line where what we here term the "new" fence was originally built at some time between 1888 and 1893.

In 1882 there was growing brush along and on the south side of the brush fence; but during the suc-

ceeding years the growing brush was slashed and the ground was gradually cleared by Charles Krueger and the plaintiff until all the land lying south of and up to the fence which could be tilled was cultivated, with the exception of about an acre and a half which lies in the northeast corner in a canyon and cannot on that account be cultivated. The land south of the fence was cultivated up to a part, and probably most, of the length of the fence for a period of more than twenty years prior to the commencement of this suit. At any rate Charles Krueger used all the land south of the fence from the time of its original construction until 1909, when he conveyed to his son; and the latter continued to use the land for the purposes for which it was adapted.

In about 1912, Thomas Jeff Brooks caused the lands described in his homestead patent to be surveyed and it was then discovered that the fence was located from about 29 to 33 feet north of where his south line would be if established upon the ground in exact accordance with the description in his patent. Apparently nothing was done by Thomas Jeff Brooks or his son towards claiming this narrow strip of land until about 1915, when the defendant "put boards in there * * for the fence, over on the line,—put boards and some posts about one fourth of the way through."

The plaintiff had a survey made of Tract A and of the controverted strip and thus ascertained the description by metes and bounds of the land lying south of the fence. The following is a description of all the lands south of the fence as it has been continuously maintained since the time it was built about thirty years ago: Commencing at a point 20 feet south 89 degrees 32 minutes west of the center of section six (6) in township one (1), north of range one (1), west

of Willamette Meridian and running thence south 89 degrees 32 minutes west 1,298.25 feet; thence north no degrees 7 minutes east 1,340.53 feet; thence north 89 degrees 37 minutes east 1,307 feet; thence south no degrees 28 minutes west 1,338 feet to the point of beginning. For convenience this description will be called Tract C; and for brevity the disputed strip of land will sometimes be called Tract D. It must be kept in mind that Tract C embraces the north half of Tract A and also the whole of tract D. The section, as will be observed from the measurements, is an irregular one.                                AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Cicero M. Idleman.*

For respondent there was a brief over the name of *Messrs. Richards & Richards,* with an oral argument by *Mr. Norman S. Richards.*

HARRIS, J.—1. It is not necessary to state any additional facts or to relate any more of the evidence concerning the nature of the use which the plaintiff and his grantor made of the lands south of the fence; but it is enough to say that although the evidence in behalf of the plaintiff was contradicted by witnesses for the defendant, nevertheless, the record clearly shows that the plaintiff and his grantor have been in actual possession of and have used Tract D under claim of ownership for considerably more than ten years. The fact that all the land south of the fence was cleared and the fact that all the land south of the fence, which could be cultivated, was in truth cultivated up to the fence plus the fact that the fence was maintained as the dividing line for so many years is

the strongest kind of evidence that Charles Krueger as well as his successor, the plaintiff, claimed ownership in all the land south of the fence. In brief, the evidence shows that the plaintiff is the owner in fee simple of Tract D by force of a title acquired by adverse possession: *Gist* v. *Doke,* 42 Or. 225 (70 Pac. 704) ; *Dunnigan* v. *Wood,* 58 Or. 119, 125 (112 Pac. 531) ; *Stout* v. *Michelbook,* 58 Or. 372 (114 Pac. 929).

The principal attack made by the defendant in his printed brief is directed against the pleadings. The plaintiff filed a complaint and an amended complaint. Reducing the original complaint to the briefest terms it may be said that the plaintiff avers that he owned in fee simple and was at the time of the filing of the complaint in the possession of land, the description of which as given in the complaint corresponds with Tract A, and that he and his predecessor in interest had been in the adverse possession of such described land for more than thirty years; that the defendant ''has a tract of land of which he is the owner * * adjacent to and extending along the north boundary line of plaintiff's said land. That the defendant without the consent of the plaintiff forcibly entered upon the plaintiff's said tract of land and has dug holes and erected fences upon the said tract of land * * thereby cutting off from plaintiff's said premises a strip of land 33 feet wide extending along the entire north side''; and that the defendant ''claims an estate or interest in said tract or parcel of land (Tract D) adverse to plaintiff.''

The defendant answered and admitted that the plaintiff owned Tract A and admitted that the defendant owned the adjoining tract on the north; but the defendant denied that he had entered upon the plaintiff's land as alleged in the complaint.

With the permission of the court the plaintiff filed an amended complaint. In paragraph II of his amended complaint the plaintiff avers that he owns in fee simple and is in possession of—

"that certain * * parcel of land * * described as follows": (Here appears a description which corresponds with Tract A.)

This paragraph continues thus:

"That all of the northern part or portion of the land owned by the plaintiff (Tract C is here described) has been and now is used by the plaintiff and his predecessors in interest for pasturage and cultivation purposes for more than thirty years last past."

Paragraph III avers that the plaintiff and his predecessors now and have been during all the time mentioned in the pleading—

"in actual, adverse, open, notorious, continuous, uninterrupted and peaceable possession of the following described parcel or tract of land, to wit: All of the northern part or portion of land owned by plaintiff and his predecessors in interest (a description of Tract C is here given). That all of the land so held as above set forth by the plaintiff and his predecessors in interest and his and their grantors has been and now is under fence and used by the said plaintiff and his predecessors in interest for pasturage and cultivation purposes for more than thirty years last past and said plaintiff and his predecessors in interest have paid all taxes and assessments levied and assessed on said tract or parcel of land to date."

In paragraph IV it is alleged that the defendant owned a tract of land—

"adjacent to and extending along the north boundary line of plaintiff's said land. That the defendant without the consent of the plaintiff forcibly entered upon the plaintiff's said tract of land as hereinbefore described in paragraph III of this amended complaint

and has dug holes and erected fences upon the said tract of land extending across the entire north side of plaintiff's said tract of land, thereby cutting off from plaintiff's said described land a strip of land 33 feet in width extending along the entire north side of said land, thereby attempting to entirely exclude the plaintiff from the use of said strip of land. The said 33-foot strip belongs to the plaintiff and has been held and used in actual, adverse, open, notorious, continuous, uninterrupted and peaceable possession by the plaintiff and his predecessors in interest for more than thirty years last past_as hereintofore alleged."

Paragraph V repeats the averment that Tract C has been inclosed by a fence for more than thirty years, "has been held in actual, open, adverse, notorious, continuous, uninterrupted and peaceable possession by this plaintiff and his predecessors in interest."

The defendant filed a motion against the amended complaint; but he answered when the court denied the motion. In his answer the defendant admitted that part of paragraph II which avers that plaintiff owned Tract A but denied the allegation that plaintiff had used Tract C for more than thirty years, denied paragraph III, admitted the averment in paragraph IV that the defendant owned the land adjoining plaintiff's premises on the north, and denied the remainder of the amended complaint.

The case came on for trial and the plaintiff proceeded to examine his first witness and thereupon the defendant objected to the introduction of any evidence on the grounds that: (1) A court of equity was without jurisdiction; and (2) "the complaint does not state facts sufficient to constitute a cause of suit." When this objection was overruled, the defendant immediately asked for permission to file an amended answer; but

the court denied the motion saying in explanation of the ruling,

"It is rather late to come in and ask for an amendment during trial, unless a very clear case is made out, and I doubt whether you have done that."

The proposed amended answer contained some affirmative matter. In substance this affirmative matter states that the defendant owns Tract B and that the plaintiff owns an adjacent tract on the south which is described in the proffered pleading by metes and bounds. This description by metes and bounds of the land which the defendant alleges is owned by the plaintiff is in reality only another way of describing Tract A. It is then alleged that the true boundary line between the premises owned by the plaintiff and those owned by the defendant is a line drawn between Tracts A and B.

2. The defendant filed an answer to the original or first complaint and if the cause had been tried on those two pleadings the issue for trial would have related to a strip 33 feet wide extending across the north end of Tract A instead of a strip across the north end of Tract C. The defendant knew what the plaintiff was complaining about and he knew what the plaintiff was attempting to put in issue for trial. The defendant was not and could not have been surprised by the amendment. The plaintiff intended to litigate the 33-foot strip which was in dispute between the parties and the defendant could not have been misled as to the intention of the plaintiff. Instead of describing Tract C the plaintiff described Tract A. The plaintiff stated a cause of suit, but it is manifest that a clear mistake was made by the plaintiff and it was entirely proper in the furtherance of justice and on the authority of

many analogous precedents for the court to permit the filing of an amended complaint: *Baldock* v. *Atwood,* 21 Or. 73, 79 (26 Pac. 1058); *Koshland* v. *Fire Assn.,* 31 Or. 362, 365 (49 Pac. 865); *Farmers' Bank* v. *Saling,* 33 Or. 394, 404 (54 Pac. 190); *Christensen* v. *Nelson,* 38 Or. 473, 476 (63 Pac. 648); *Ridings* v. *Marion County,* 50 Or. 30 (91 Pac. 22).

3. The defendant argues that a court of equity is without jurisdiction. The plaintiff was in actual possession of all the land south of the fence when he began this suit. The evidence for the plaintiff was to the effect that he was and had been in possession of the disputed land. The defendant, when testifying as a witness, stated that he did not claim that he had been in possession of Tract D, but on the contrary he expressly admitted that the plaintiff had been in possession of all the land south of the fence. It is therefore admitted that the plaintiff was in possession. The plaintiff was not obliged to wait for the defendant to commence an action in ejectment. The plaintiff could not prosecute an action in ejectment, and consequently a suit in equity was the only remedy available to him; and having availed himself of the remedy afforded by a suit in equity he had a right to have the title adjudicated: *McLeod* v. *Lloyd,* 43 Or. 260, 276 (71 Pac. 795, 74 Pac. 491); *Comegys* v. *Hendricks,* 55 Or. 533, 534 (106 Pac. 1016). Indeed, a suit to quiet title would be a misnomer and no remedy at all if in the circumstances presented here, the plaintiff could not have his title tried out and determined. As was said by Judge DEADY in *Starr* v. *Stark,* 1 Sawy. 270, 276, Fed: Cas. No. 13;316, by a final decree—

"the title to the premises, as between the parties is determined, and all questions or matters affecting such title are concluded thereby."

See, also, *Savage* v. *Savage,* 51 Or. 167, 170 (94 Pac. 182) ; *Moores* v. *Clackamas County,* 40 Or. 536, 540 (67 Pac. 662).

Most of the cases relied upon by the defendant were suits to establish boundary lines. This is not a suit to establish a boundary line; nor is it an attempt by a claimant out of possession to quiet his title as against a person in possession.

4. The defendant complains because the court refused to permit him to file his proposed amended answer. The amended complaint was filed on November 28, 1917; and an answer to this amended complaint was filed at some time not definitely disclosed by the record. The case came on for trial on March 27, 1918, and on that day the defendant offered to file the amended answer. It is not necessary to determine whether the alleged delay of the defendant alone justified the ruling of the court, for the reason that no substantial right of the defendant was injuriously affected. The answer which had already been filed permitted the defendant to offer all the evidence which could have been admissible under any of the issues which could properly have been raised by the proposed amended answer. It must, of course, be remembered that this is a suit to quiet title and the defendant could not convert it into a suit to establish a boundary line by the mere filing of an answer seeking the establishment of a boundary line. The defendant was permitted to tell the whole of his story about the controverted land and the decree of the trial court was rendered after hearing and considering all the evidence offered by both parties.

The amended complaint contains much unnecessary matter. It would have been enough if the plaintiff had alleged ownership and possession and that the de-

94 Or. —9

fendant claims an adverse interest, as taught in the following and other precedents: *Cooper* v. *Blair,* 50 Or. 394, 397 (92 Pac. 1074); *Savage* v. *Savage,* 51 Or. 167, 170 (94 Pac. 182); *Stanley* v. *Topping,* 71 Or. 590, 604 (143 Pac. 632); *Mascall* v. *Murray,* 76 Or. 637, 645 (149 Pac. 521).

The amended complaint sufficiently alleges that the plaintiff is in possession of Tract C. We think, too, that it can be said that the pleading avers that the plaintiff owns Tract C. In paragraph II is the averment "that all of the northern part or portion of the land owned by the plaintiff commencing at a point"; and then follows a description by metes and bounds of Tract C. Again, in paragraph III we find the allegation that "all of the northern part or portion of land owned by plaintiff and his predecessors in interest commencing at a point 20 feet"; and then there is a description of Tract C. The complaint avers in positive language that the plaintiff owns in fee simple and is in possession of Tract A.

5, 6. The averments of ownership are not, it is true, made with commendable directness, and yet, when taken in connection with the rest of the pleading, we think that it can be said that the plaintiff alleges that he is the owner of Tract C. Moreover, the pleading also recites the source of the plaintiff's title and alleges the probative facts upon which the claim of ownership is rested. The amended complaint sufficiently alleges ownership to support the decree and even though it be assumed that the pleader must allege the source and ingredients of his title, still it may fairly be said that the amended complaint sufficiently alleges title by adverse possession and the elements requisite for such title: 2 C. J. 259, and notes. No good purpose could possibly be served by remanding the cause for a new

trial, since it is fair to presume that a new trial would disclose no additional information and when too, it is apparent, as it is here, that a new trial would amount to nothing more than a second hearing of the same evidence which has already been once heard and from which it clearly appears that the plaintiff acquired a fee-simple title to Tract D in virtue of adverse possession. Adverse possession for the requisite period vested title in the possessor of Tract D by operation of law: *McKinney* v. *Hindman,* 86 Or. 545, 548 (169 Pac. 93, 1 A. L. R. 1476); *Parker* v. *Kelsey,* 82 Or. 334, 343 (161 Pac. 694); *Spath* v. *Sales,* 70 Or. 269, 273 (141 Pac. 160).

Upon the whole record we think that the decree of the trial court is correct and that the pleadings are sufficient to support the decree.

The decree is therefore affirmed.        AFFIRMED.

BEAN, BURNETT and JOHNS, JJ., concur.

---

Modified as to costs November 12, 1919.
PETITION TO MODIFY.
(184 Pac. 288.)