## PIERCE ET AL. *v.* WAGONER

[No. 17,322. Filed March 5, 1945.]

*J. Edward Headley,* of Warsaw, for appellants.
*Ezra W. Graham,* of Warsaw, for appellee.

DRAPER, C. J.—The appellee brought an action against the appellants to quiet the title to certain real estate and for other relief not here important. Later the appellants brought an action against the appellee in the same court to recover from the appellee the possession of the same real estate.

The actions were by agreement consolidated for trial. The jury found for the appellee that his title should be quieted as against the appellants, and further found against the appellants on their complaint for possession. Judgment was rendered accordingly. Appellants' motions for new trial were overruled and those rulings are assigned as error in this court.

In the view we take of this case we need only consider the sufficiency of the evidence to sustain the verdict.

The evidence most favorable to appellee discloses that appellants, who were husband and wife, took title by the entireties to a tract of land in Kosciusko County on January 10, 1928, by a deed duly recorded in the office of the Recorder of that county on the same day. A portion of that land was subdivided by the appellants in 1931 and the real estate in question is one of the lots in that subdivision.

In October, 1937, appellee was working for appellant, Bruce L. Pierce, in a boatshop owned and operated by the latter, at a wage of $15.00 per week, and Mr. Pierce verbally agreed with appellee that if he would continue in the employment for five years at a wage of $12.50 per week, Mr. Pierce would make the summer cottage situated on said lot fit for winter occupancy, would maintain the property and pay the taxes and minimum electric bill—the appellee and his wife to occupy the premises during that period rent free, and

at the end of that period to receive a deed to the property.

Pursuant to the agreement the cottage was readied for winter occupancy and on February 5, 1938, the appellee and his wife moved in, and they still occupy it. After moving in the appellee did painting, wiring, grading and landscaping around the place, some on his own time and some on his employer's, each contributing toward the cost of materials.

About Christmas time of 1940, Mr. Pierce told appellee he had done well in his business, and would deliver the deed at the end of the fourth instead of the fifth year of the employment, and he thereafter frequently suggested that they must have the deed prepared for delivery to appellee, but it was never prepared or delivered. On August 29, 1942, although appellee had so far fully performed his part of the agreement, Mr. Pierce discharged him and shortly thereafter refused to deliver the deed, but agreed to make a settlement provided appellee would first vacate the premises, which he refused to do.

The evidence with particular reference to the appellant, Olive K. Pierce, discloses that she lived a short distance from her husband's boathouse where appellee was employed and she called there almost daily. She called at the cottage while it was occupied by the appellee at least twice; knew appellee was living in the house; never objected to the things he was doing there, or to his occupancy of the premises or inquired as to his arrangement concerning it; never asked appellee for rent and never told appellee she had any interest in the premises.

In the spring of 1939, Mrs. Pierce told appellee's wife while visiting in the cottage that "after you and Au-

drey (the appellee) get the place you and Audrey will have more money to do with and will enjoy fixing up things like you want them." The appellee testified that he first learned of Mrs. Pierce's interest a "couple of years" after he moved into the premises. Alterations and repairs to the cottage were ordered and paid for by Mr. Pierce.

Among other things the appellee alleges:

"That during all the time from February 5, 1938, and prior thereto, and continuously thereafter until after August 29, 1942, this plaintiff relied upon and believed in the statements and representations of the defendant Bruce L. Pierce, that he was the owner . . . and did not learn of any interest of the defendant Olive K. Pierce in said lot until after August 29, 1942.

"That during all the times herein mentioned the defendant, Bruce L. Pierce, lived with his wife the defendant Olive K. Pierce on real estate adjoining . . . the boat house and place of business of the defendant Bruce L. Pierce where the plaintiff was employed, and . . . Olive K. Pierce was frequently in and about the place of plaintiff's employment, and in and about plaintiff's residence, both alone and with her husband, and had full knowledge of the plaintiff's contract aforesaid with the defendant Bruce L. Pierce, and never at any time until after the commencement of this action raised any objection or question of the plaintiff's possession or right to possession of said real estate."

The appellee testified that Mr. Pierce stated he owned the place. He had confidence in Mr. Pierce, believed and relied on his statements and made no investigation to find out whether they were true or not. He never talked to Mrs. Pierce about the matter and never had any conversation with her about it either before or after he discovered she had an interest in the place.

We must, of course, consider the situation presented in the light of the law as it pertains to estates by the

entireties, although it will be unnecessary, we think, to discuss the attributes thereof. It is not and could not be claimed that Mrs. Pierce was a party to the agreement, so the appellee must depend as to her upon an equitable estoppel, for unless he relied and had a right to rely upon her conduct, she cannot be bound in this case.

At the threshhold we are confronted by the fact that the appellee had constructive notice of her title. He could not blindly rely upon the false statements of another, for it is well settled that one asserting an estoppel must show himself not only to be destitute of knowledge, but without a convenient and available means of acquiring such knowledge. *Geisendorff* v. *Cobbs* (1911), 47 Ind. App. 573, 94 N. E. 236. Hers was not a secret title, but was one of which notice had been promptly given to the world in the manner prescribed by law. The public records were available to the appellee and he was bound to take notice of the facts ascertainable by an inspection thereof. *The Blue Ridge Marble Company* v. *Duffy* (1891), 128 Ind. 79, 27 N. E. 430.

The fact that her title had been recorded would not protect Mrs. Pierce against her own affirmative act or express misstatement calculated to mislead or deceive appellee to his damage, 19 Am. Jur. p. 770, § 116, but the evidence does not disclose any positive or affirmative act or statement on her part, unless it be her conversation with the wife of appellee in which she said that "after you and Audrey get the place you and Audrey will have more money to do with and will enjoy fixing up things like you want them."

The value to appellee of any inference favorable to him that might be drawn from the statement is de-

stroyed by the fact that estoppels cannot be created by inference or intendment, but can arise only from a precise affirmation of that which creates it. *Wilkerson* v. *Wood* (1924) 81 Ind. App. 248, 143 N. E. 166. Moreover, assuming it was not a casual statement and that it was timely communicated to appellee by his wife to whom it was made, there is neither pleading nor proof that it influenced the appellee or that he placed any reliance upon it in making the agreement, nor could there be, for the statement came more than a year after the making of the agreement. See *McKinney* v. *Hindman* (1917), 86 Ore. 545, 169 P. 93, 1 A. L. R. 1476.

The appellee asserts in his brief that he relied upon the husband's assertions and the wife's silence as to her ownership. Such is not directly alleged nor does it seem to be supported, unless inferentially, by the evidence. However, assuming without deciding that the wife might under some circumstances be bound by silence though her title was of record, we can still find no evidence of silence on her part which amounted to a concealment of facts known or imputable to her and upon which appellee could have relied to his damage.

It is true her husband made an agreement with appellee under which the latter took up occupancy of the property. He also arranged for, and ordered and paid for remodeling and repairs, and paid the taxes, insurance and the like, and she knew his occupant was taking care of the grading and the upkeep of the yard and was otherwise keeping up the property, all without objection made to or inquiry made of the appellee and without any demand for rent or warning to appellee of her interest in the property. In short, the husband managed the property and the wife permitted him to do so. Such circumstances without

more, could not be held to impute to her knowledge that he had agreed to convey the property to the occupant, nor to impose upon her any duty to speak.

It would establish a dangerous doctrine to say that such a wife, with her title as a tenant by the entireties of record, should be estopped to deny that her husband had sold her interest in the property or given it away.

The evidence being insufficient to support the verdict, the judgment is reversed with instructions to sustain appellants' motions for new trial.

NOTE.—Reported in 59 N. E. (2d) 572.