Argued October 15, affirmed November 12, 1959

# KNECHT *v.* SPAKE ET AL

346 P. 2d 98

*Donald C. Walker* argued the cause for appellants. On the brief were Crum, Walker & Buss, Portland.

*Ernest Cole,* Portland, argued the cause and filed a brief for respondent.

Before McALLISTER, Chief Justice, and WARNER, PERRY and KING, Justices.

KING, J. (Pro Tempore)

This is a suit by the plaintiff, Fred Knecht, Jr., to quiet title to certain real property located in Multnomah County, Oregon.

The principal question in the case is: Was the evidence sufficient to sustain plaintiff's claim of adverse possession?

On the 24th day of September, 1926, Elizabeth C. Good, a widow, by bargain and sale deed, transferred

to Louis J. Struett and Kathryn A. Struett, husband and wife, the real property described as follows:

"That part of Lot Thirteen (13), Mountain View Park, described in deed recorded April 2, 1904, in Multnomah county deed records, Volume 318, Page 305, being deed from Walter J. Burns and Mary C. Burns, his wife to George Good;

"All of Lot Fourteen (14) Mountain View Park;

"All of Lot Fifteen (15), Mountain View Park, excepting therefrom that portion of said Lot conveyed by George Good and Elizabeth C. Good, his wife, to Walter J. Burns, by deed recorded April 12, 1904, in Multnomah county deed records, Volume 319, Page 272."

In 1930 the Struetts mortgaged the property to National Savings and Loan Association to secure the amount of $625.

Kathryn A. Struett died in 1933, and title to the property vested in Louis J. Struett, subject, of course, to the mortgage of National Savings and Loan Association.

In July, 1934, the note and mortgage were sold, assigned and transferred to Fred Knecht, Sr., father of the plaintiff herein.

Louis J. Struett and Fred Knecht, Sr., were apparently very good friends. Mr. Struett operated a tailor shop on Third Street, and Mr. Knecht, Sr., operated a dairy on Second Street in Portland, Oregon, and visited each other quite often.

Plaintiff claims that in the latter part of 1934, Mr. Struett was unable to pay the back taxes, mortgage and interest, and offered the property to Mr. Knecht, Sr., in full payment and satisfaction of the mortgage obligation, and at that time turned absolute control and possession of the property over to

him, and at the same time left with Mr. Knecht, Sr., the old deed from Mrs. Good so that he could get the description to have a deed prepared from Struett to Knecht, Sr. The plaintiff claims continuous adverse possession, by his father and then himself, from the latter part of 1934 until the trial was held. This was all denied by the defendants in their answer.

The defendants by their answer, in addition to denying plaintiff's claim as above mentioned, claim their title as heirs of Elma Kalsch Struett, alleged to have married Louis J. Struett after the death of Kathryn A. Struett. Louis J. Struett died in October, 1936. Elma Kalsch Struett was alleged to be his sole and only heir. She died during the year 1954.

Fred Knecht, Sr., died January 29, 1954. Fred Knecht, Jr., the plaintiff, succeeded to his father's rights to the disputed property, as an heir under his will and by deeds from other heirs of Fred Knecht, Sr. The trial court, sitting in equity, heard the testimony of plaintiff's witnesses. The defendants did not put on any witnesses. The court decided for the plaintiff and the defendants bring this appeal.

Defendants allege three assignments of error. We will consider assignment of error No. 3 first, as its determination is necessary to decide the extent of proof required to sustain a claim of adverse possession.

■■ Assignment of error No. 3 is as follows:

"The Court erred in allowing any testimony of an oral agreement to convey said real property."

The defendants then cite ORS 41.580, Statute of Frauds, and particularly the part as follows:

"* * * * *

"(5) An agreement for the leasing for a

longer period than one year, or for the sale of real property, or of any interest therein."

We, of course, agree with the above section of the law when properly applied in the proper case. However, the plaintiff's position in this case, in his complaint, in his brief and in his argument makes it clear that his suit is not based upon a deed or a mortgage, but is based upon adverse possession, and the testimony regarding the alleged verbal agreement was for the purpose of showing the nature of the original alleged possession of Fred Knecht, Sr., and Louis J. Struett's knowledge thereof.

The plaintiff is not claiming title by virtue of the alleged oral agreement, and is not asking that he be given a deed based on an oral agreement. He merely alleges and claims that his predecessor went into possession of the property at the time of and as a result of the oral agreement. He claims it was the beginning of his adverse possession and as notice to the owner of his hostile and adverse claim.

*Hurlburt v. Chrisman,* 100 Or 188, 195, 197 P 261, speaking of oral agreement, says:

"* * * This claim, however ill founded in law at the time, was an actual claim on the part of Chrisman to be the owner of the land absolutely from that date forward. Of this claim Mrs. Cummins had full knowledge. Indeed, she participated in the promulgation of that claim. It was sufficient to initiate that adverse possession which, if persisted in for ten years continuously, ripens into title in fee simple in the adverse claimant, under such precedents as Caufield v. Clark, 17 Or. 473 (21 Pac. 443, 11 Am. St. Rep. 845); Dunnigan v. Wood, 58 Or. 119 (112 Pac. 501); Moore v. Fowler, 58 Or. 292 (114 Pac. 472); Stout v. Michelbook, 58 Or. 372 (114 Pac. 929); Parker v. Wolf, 69 Or. 446 (138 Pac. 463); Parker v. Kelsey, 82 Or. 334

(161 Pac. 694); McKinney v. Hindman, 86 Or. 545 (169 Pac. 93, 1 A.L.R. 1476); Krueger v. Brooks, 94 Or. 119 (184 Pac. 285); Looney v. Sears, 94 Or. 690 (185 Pac. 925, 186 Pac. 548)."

If the alleged verbal agreement had been to take a deed in lieu of and intended as a mortgage, the rule as set forth in *Caro v. Wollenberg,* 68 Or 420, 136 P 866, would be in effect and he would have held as a mortgagee in possession, and it would not have been notice of adverse holding.

The testimony in this case sustains the claim that Fred Knecht, Sr., took possession of the property from Louis J. Struett under the oral agreement and with the mutual understanding that he should have full title, and not as a mortgagee in possession who was to account for the rents and profits, or who was to return the property. The testimony of oral agreement was properly received, to show knowledge of the hostile and adverse claim.

1 Am Jur, Adverse Possession 872, § 138, says:

"* * * It [hostility] means only that one in possession of land claims the exclusive right thereto. It also imports a denial of the owner's title."

At 1 Am Jur, Adverse Possession 873, § 139, it also says:

"The words 'open and notorious possession,' as applied to adverse holding of land of another, mean that the disseisor's claim of ownership must be evidenced by such acts and conduct as are sufficient to put a man of ordinary prudence on notice of the fact that the land in question is held by the claimant as his own."

The same authority at page 874, § 140, says:

"* * * It is, therefore, essential in all cases that the owner shall have notice to that effect.

If he has actual notice, that will, of course, be sufficient in itself."

In the present case we have the direct testimony of the plaintiff, Fred Knecht, Jr., of the oral agreement putting his father in possession of the premises and the knowledge thereof by the owner, and the testimony of several witnesses that that possession was never questioned or disturbed by the original owner. While the proof is somewhat fragmentary, as it usually is after 20 or 25 years, yet it most certainly establishes a prima facie case that Fred Knecht, Sr., claimed possession of the property, openly and hostile as against Louis J. Struett, with the latter's knowledge and without protest. That claim has continued uninterrupted through his successors to the present time.

As mentioned before, the defendants offered no evidence at all, either by direct testimony or by deposition, although the record shows that an order was made permitting them to take testimony by written interrogatories. We must conclude that Fred Knecht, Sr., had possession, openly, with hostility, and with knowledge, at the beginning of the claimed adverse possession, sufficient to set the statute in operation.

We now come to appellant's first and second assignments of error, which will be considered together.

Assignment of error No. 1 states:

"The Court erred in declaring that the respondent and his predecessor had gained title to said property through adverse possession by the payment of taxes."

We agree that the payment of taxes alone in this

case was not sufficient to prove adverse possession, but we do not construe that the circuit court so held. That court did make a statement regarding the payment of taxes for twenty-odd years, but did not say that it was holding for the plaintiff on that basis alone. It stated that it was holding for plaintiff on an equity basis and mentioned the payment of taxes as a incident to that holding. Payment of taxes should be considered and given weight, as we will later point out.

Appellants' assignment of error No. 2 is as follows:

"The Court erred in not granting appellants' motion for a decree in their favor for the reason that respondent failed to establish that they occupied said property in a manner required by the laws of the State of Oregon."

These assignments of error Nos. 1 and 2 bring us directly to the question whether plaintiff's adverse possession of the property was sufficient for him to gain title to the property by adverse possession under Oregon laws, as applied to the particular facts of this case.

In determining this general question we must keep in mind our holding that the owner had knowledge of the start of the claim and made no objection thereto and that open hostility to his title was known to him.

We must also bear in mind that whatever proof was offered in this case by the plaintiff was not denied by any witnesses for the defendants. But the plaintiff would at least have to establish a prima facie case on each of the necessary elements of adverse possession. This we believe he has done.

The type of land in this case presents an unusual situation in that the terrain was rough, steep, brushy and was exceedingly wild land; not used for and probably not capable of being used for farm lands or even grazing land. It contained very little, if any, merchantable timber. It had no buildings or fences on it, and about the only improvement was a small cleared area used for picnic grounds on which picnic tables were constructed. Some wood was removed from the premises and several loads of leaf mold were taken from it to Portland.

The plaintiff and his family and his father as his predecessor did make constant use of the premises for picnics for themselves and their friends and were on the premises many times a year for that purpose and for general inspection of the property. The testimony also shows that the above-described use is essentially the same use that the previous owner, Mr. Louis J. Struett, made of the premises for many years prior to plaintiff's claim to the premises.

There was no proof that the land was suitable for any other use than for outings, picnics and view property. There was no available water. There was no electricity nor sewers. The construction of buildings would be exceedingly expensive and require expensive levelling work. There was no reason for fencing the property, and it would be expensive and out of proportion to the benefit and to the value of the property.

There are no cases in Oregon and very few in other jurisdictions which deal entirely with wild land as in this case.

In the recent case of *Springer v. Durette,* 217 Or

196, 342 P2d 132, in speaking of lands used for grazing during part of the year, Justice O'CONNELL says:

> "Under the circumstances existing in the present case we regard the act of grazing cattle upon the peninsula as sufficient to meet the requirement of obtaining title by adverse possession if the plaintiff can establish the adverseness of his claim, * * *. The claimant need only show that he 'has acted towards the land in question as would an average owner, taking properly into account the geo-physical nature of this land,' 6 Powell on Real Property § 1018, p 731, considering the 'reasonable uses for which the land in question was suitable.' 6 Powell at p 717."

In *Broadus v. Hickman,* 210 Miss 885, 50 So2d 717, the court says:

> "* * * Again, it is the rule that less notorious and obvious acts upon the land are essential to vest title in what are known as wild lands than lands suitable to occupancy by residing thereon and putting them to husbandry and farming."

citing *McCaughn v. Young,* 85 Miss 277, 37 So 839, 852, which case stated the rule as follows:

> "The true doctrine, and the one now generally recognized, is thus stated by Harris, J., in Ford v. Wilson, 35 Miss. 490, 72 Am. Dec. 137: 'That neither actual occupation, cultivation, or residence are necessary to constitute actual possession when the property is so situated as not to admit of any permanent useful improvement, and the continued claim of the party has been evidenced by public acts of ownership, such as he would exercise over property which he claimed in his own right, and would not exercise over property which he did not claim.' "

*Anderson v. Richards,* 100 Or 641, 651, 198 P 570, says:

> "Adverse possession is founded upon the in-

tent with which the occupant has held possession, and this intent is to be determined by what he has done: Rowland v. Williams, * * * [23 Or 515, 32 P 402]."

This rule is restated in *Reeves et al. v. Porta,* 173 Or 147, 155, 144 P2d 493, where it points out that the intention of adverse possession must be so notorious that the owner may be presumed to have knowledge of the adverse claim. In the present case, as before mentioned, the evidence showed the original owner had actual knowledge and gave his consent to the adverse possession of the plaintiff and his predecessor. Neither the original owner nor any of the defendants who claimed under him ever questioned the plaintiff's claim or made any claim themselves during the period of over 20 years. They offered no proof of any kind to overcome the prima facie case established by the plaintiff.

The evidence clearly shows that the plaintiff and his predecessor put this wild land to the same use that the original owner had always made of it; that they went on the property frequently for pleasure and for inspection purposes; that they cleared out some brush and bramble and cut some wood and removed several loads of leaf mold. They openly and notoriously took many persons onto the property and always claimed it as their own. The evidence showed that they were generally considered the owners. The Portland City Park Department attempted to purchase the property from the plaintiff, as did several other persons, which indicated that his claim of ownership was well known. The property was listed in probate court as part of the Fred Knecht, Sr., estate. For over 20 years, and during all the time they claimed possession, the plaintiff and his father

paid all the taxes on the property and in substantial amounts. While the payment of taxes is not conclusive, it is certainly substantial evidence of claim of ownership when carried on continuously for over 20 years. *Phipps v. Stancliff*, 118 Or 32, 35, 245 P 508; *Volckers v. Seymour*, 187 Or 170, 210 P2d 484; *Holtzman v. Douglas*, 168 US 278, 42 L ed 466, 18 S Ct 65; *Todd v. Weed*, 84 Minn 4, 86 NW 756; *Walker et al. v. Bell et al.*, 154 Neb 221, 47 NW2d 504; 4 Tiffany, Law of Real Property 415, § 1138; 1 Am Jur, Adverse Possession 927, § 245.

Although it is doubtful that the foregoing acts on the part of plaintiff and his predecessor in interest, standing alone, would have been sufficient to fulfill the requirement of actual possession as an ingredient of adverse possession, we hold that these acts, when coupled with the attempted oral conveyance to the mortgagee, were sufficient to satisfy that requirement. It is clear that the other elements of adverse possession were established in this case.

Decree quieting title to the above-described lands in the plaintiff, Fred Knecht, Jr., was properly entered.

Affirmed.